**1487 AMUSEMENT CORPORATION,**
Plaintiff,

v.

Norman REDLICH et al., Defendants.

**IMAGE BOOK DISTRIBUTION, INC.,**
et al., Plaintiff,

v.

**CITY OF NEW YORK** et al., Defendants.
Nos. 72 Civ. 4292, 72 Civ. 4311.

United States District Court,
S. D. New York.

Nov. 6, 1972.

Kassner & Detsky, New York City, for plaintiff 1487 Amusement Corp.; Herbert S. Kassner, New York City, of counsel.

Arnold E. Wallach, New York City, for plaintiffs Image Book Distribution Inc., Geoffrey Kline and Jack Wolf; Jerald Rosenthal, New York City, of counsel.

Norman Redlich, Corp. Counsel, for defendants Norman Redlich, Bess Meyerson, City of New York, and Department of Consumer Affairs; Israel Rubin, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., State of New York, for defendant Myles Lane; Burton Herman, Asst. Atty. Gen., of counsel.

GRIESA, District Judge.

The plaintiffs in these two actions are operators of sexually oriented "peep shows" in the City of New York. They seek to enjoin the City of New York

and officials thereof [1] from enforcing against peep shows the Administrative Code provisions requiring the licensing of places of public amusement (Art. I, Title B of Chapter 32).[2] These actions are brought under Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and under the Federal Constitution. Plaintiffs claim that enforcement of the licensing provisions against peep show operators would result in an unconstitutional prior infringement of free speech. Among the reasons assigned for the invalidity of the licensing scheme are the alleged vagueness of the licensing standards and the onerous nature of the license applications which the peep show operators are required to submit.

The plaintiffs in both cases have moved for preliminary injunctions to stay the enforcement of preliminary injunctions granted by the New York Supreme Court, which prohibit the operation of plaintiffs' peep shows without licenses. Plaintiffs' motions also seek to bar the continued prosecution of certain criminal actions against plaintiffs and their employees now pending in the State courts, and also to bar generally all enforcement of the licensing provisions against peep shows.

Plaintiffs' motions for preliminary injunction in this Court are denied. The constitutional questions raised by plaintiffs, and underlying questions of local law regarding the interpretation of the New York City Administrative Code, are now before the State courts in the pending civil and criminal proceedings. Plaintiffs have shown no justification for having a federal district court interfere with the State's judicial processes.

There is no showing that such processes are inadequate to protect plaintiffs' constitutional rights. Indeed, as the facts described below demonstrate, plaintiffs have deliberately failed to take advantage of available appellate remedies in the State courts, and have sought to create the appearance of need for federal court intervention where no such need actually exists.

### Facts

#### 1487 Amusement Corp.

This plaintiff's establishment is at 1487 Broadway in the Times Square area. It consists of a book store in front, and a room in back containing 15 peep show machines. According to the affidavit of Martin J. Hodas, the corporation's principal stockholder, these machines display "sexually oriented films which portray nudity and genitalia but which do not display explicit sexual congress." The attorney for 1487 Broadway states that the machines "have expressions of love-making in various forms" (Minutes of Hearing October 13, 1972, p. 29). The windows fronting on Broadway are blacked out, and contain the wording, "Bookstore and Peep Show Machines." The complaint in the action alleges (par. 2), that the store "now has a large and loyal following among adult members of the community who desire to be educated and entertained by the expression disseminated therein."

#### Image Book Distribution, Inc.

Image Book's establishment is at 127 Third Avenue, New York City, between 14th and 15th Streets. There is a book store in front, and a room at the rear containing 12 peep show machines. The

---

1. The defendants in the *1487 Amusement Corp.* case are Norman Redlich, Corporation Counsel for New York City; Bess Meyerson, Commissioner of the Department of Consumer Affairs; and Myles Lane, Justice of the New York Supreme Court. The defendants in the *Image Book* case are the City of New York, the Department of Consumer Affairs, and Norman Redlich.

2. Section B32–1.0 of the Administrative Code provides: "It shall be unlawful for any person to operate any place or premises of public amusement or sport, indoor or outdoor, or to exhibit any performance of public amusement or sport in any such place or premises, without a license therefor, upon payment of such fees as may be prescribed by the commissioner, and upon such terms and conditions as he deems necessary for proper regulation and good order." The "Commissioner" refers to the Commissioner of the Department of Consumer Affairs.

attorney for Image Book expressly stated that he declined to inform the Court as to the nature of the materials exhibited "deeming such material protected by the First Amendment regardless of content" (Affidavit of Jerald Rosenthal October 17, 1972). On the front window there is a sign reading "Guys and Gals Together, Only 25 Cents a Show." The doorway contains the words, "Adult Books and Magazines, You Must be Over 21."

*State Court Proceedings*

In 1967 Mr. Hodas wrote the New York City Department of Licenses to inquire whether a license is required for "a coin-operated machine that shows movies." By letter dated June 9, 1967 the Department replied that a license for such machines would not be required.

Plaintiffs allege that in early 1972 the City of New York reversed this position and asserted that peep shows should be licensed under the Administrative Code as places of public amusement. Various legal proceedings by the City followed.

The Administrative Code provides that violation of the licensing provisions is punishable by a fine up to $500 and imprisonment up to six months (§ B32–21.0). On January 26, 1972 a summons was issued to Melvin Rovinsky of 1487 Amusement Corp. returnable in the Criminal Court of the City of New York on February 29, 1972. This proceeding was adjourned several times in view of the fact that a civil action was being brought in the Supreme Court, New York County, in which the legal issues as to the interpretation and constitutionality of the Administrative Code licensing provisions would be tested. The current adjourned date of the above criminal proceeding against Rovinsky is November 28, 1972. Another summons was issued to Rovinsky on March 23, 1972, but Rovinsky has failed to appear in response thereto. A summons was issued to one Ioan Iovan of 1487 Amusement Corp. on September 6, 1972. After some delay, Iovan appeared, and the case has been set for trial December 19, 1972. 1487 Amusement Corp. also claims that a summons was issued to Willie Gardner, one of its employees, on October 16, 1972.

As to Image Book, criminal summonses have been issued to Geoffrey Kline, an employee of Image Book, and to Jack Wolf, the president of Image Book. Both Kline and Wolf are plaintiffs in the present federal court action, together with Image Book. The summonses to Kline and Wolf were issued January 27, 1972 and March 23, 1972 respectively. Both proceedings are adjourned to November 28, 1972.

The Administrative Code also provides for an injunctive remedy for enforcement of the licensing provisions (§ B32–7.0). On March 29, 1972 the City commenced a civil action in Supreme Court, New York County (Index No. 40775/72) against Image Book Distribution, Inc., Geoffrey Kline and Jack Wolf. On April 26, 1972 the City obtained an order to show cause on a motion for a preliminary injunction.

On April 12, 1972 the City commenced a civil action in Supreme Court, New York County (Index No. 40807/72) against 1487 Amusement Corp., Melvin Rovinsky and York Amusement Co., Inc. On May 1, 1972 the City obtained an order to show cause on a motion for preliminary injunction in this action.

These motions were heard by Justice Myles J. Lane, who rendered decisions on June 15, 1972 holding that the Administrative Code licensing provisions apply to the peep shows, and further holding that such provisions do not violate constitutional rights. On June 30, 1972 Justice Lane signed preliminary injunctions based on the above decisions, ordering 1487 Amusement Corp. and Image Book Distribution, Inc. to desist from operating their peep shows unless they obtained a license within 30 days following service upon them of the preliminary injunction.

The injunction was served on Image Book on July 24, 1972 and on 1487 Amusement Corp. on July 26, 1972.

Image Book asserts that it ceased operating its peep shows shortly after Justice Lane's order of June 30th. 1487 Amusement Corp. asserts that it is still operating its peep shows.

The preliminary injunctions entered against 1487 Amusement Corp. and Image Book on June 30 were appealable as of right to the Appellate Division, First Department, of the New York Supreme Court. CPLR § 5701(a)(2)(i).

Plaintiffs failed to avail themselves of the opportunity of a prompt hearing by the Appellate Division. The Appellate Division had terms for the hearing of appeals in September and October, and there is another term during the current month—November. No steps have been taken by plaintiffs to bring their appeals on for any of these terms. It is of particular interest to note that if plaintiffs had brought their appeals on for the September term, such appeals might well have been decided by the time of their motions in these federal court actions.

The September Term of the Appellate Division commenced September 5, 1972. An appeal could be heard in the September Term if the record on appeal and the appellant's brief were filed 35 days before the opening of the term, and the court might, on motion, permit a later filing. Rules of the Appellate Division, First Department § 600.11(b)(1).[3] Thus plaintiffs could have been before the Appellate Division in the September Term had they perfected an appeal by August 1, 1972 or they could have moved for an extension of this deadline upon a showing of genuine need. The August 1 date was a full month after the entry of the June 30th preliminary injunctions.[4]

Image Book did not even file a notice of appeal until August 14, 1972. 1487 Amusement Corp. filed a notice of appeal on August 18, 1972. At the hearing on the preliminary injunction motions in this Court, counsel for Image Book admitted that his client has no present plans to perfect the appeal in the Appellate Division, and will do so only if the federal court does not strike down the Code provisions (Minutes of October 13, 1972, p. 61). When counsel for 1487 Amusement Corp. was questioned about his client's plans in the Appellate Division, he answered (Minutes of October 13, 1972, p. 26):

> "Your Honor, it is my earnest hope that I will never have to file that brief, that I will never have to perfect that appeal, that Your Honor will make a determination which will make the entire proceeding in the Supreme Court moot."

When pressed further he said that the appeal would be perfected in the December[5] or January term (pp. 26–27).

*Stay Applications in State Courts*

Instead of taking steps to bring on their appeals for a prompt hearing in the Appellate Division, plaintiffs made certain rather belated efforts to obtain stays from the Appellate Division and the New York Court of Appeals as to the enforcement of Justice Lane's June 30th injunction.

On August 21, 1972 plaintiffs filed motions for stays in the Appellate Division returnable September 1, 1972. On August 24 plaintiffs applied to Justice Capozzoli for an interim stay pending decision on the stay application by the

---

3. For other terms, the record on appeal and appellants' brief are required 28 days before the opening of the term.

4. Although formal service of the preliminary injunctions was not made until July 24 in the case of Image Book and July 26 in the case of 1487 Amusement Corp., it is clear from the record that plaintiffs were fully aware of the June 30 injunctions at the time of their entry.

5. There is no December Term of the Appellate Division this year, although there are two "special order days"—December 5 and 20—at which appeals from preliminary injunctions apparently can be heard.

full Appellate Division. Justice Capozzoli denied the interim stay.

Counsel for 1487 Amusement Corp. applied to Chief Judge Fuld of the New York Court of Appeals on August 28, 1972 for a review of Justice Capozzoli's denial of an interim stay. Judge Fuld denied the application for lack of jurisdiction.

On October 2, 1972 the Appellate Division handed down orders denying the applications to stay Justice Lane's preliminary injunctions. As already indicated, plaintiffs had taken no steps to perfect their appeals to the Appellate Division.

### Contempt Proceedings

Although 1487 Amusement Corp. has not complied with the June 30th order of Justice Lane, the City has not yet sought to hold that company in contempt. Apparently the City was allowing time for proceedings in the Appellate Division. The City now advises that it intends to bring a contempt action in the next few weeks.

### License Applications

1487 Amusement Corp. claims that it filled out and attempted to file an application for a license, but that the City refused to accept such application because it was not accompanied by a theater certificate of occupancy, something impossible for it to obtain. The City states that 1487 Amusement Corp. never attempted to file an application for a license and asserts that an application for a license is always accepted for filing and the applicant is then notified of any additional information or documents required to be filed. The City also states that peep show operators were never notified that a theater certificate of occupancy would be required; and that indeed the only certificate of occupancy needed is a certificate relating to the particular use. With respect to the license application which 1487 Amusement claims it attempted to file, Mr. Hodas of that company asserts that with the consent of his attorney he threw such application away.

Image Book's attorney states that his client has not and does not intend to fill out an application (Minutes of Hearing October 13, 1972, p. 63).

Both 1487 Amusement Corp. and Image Book contend that the applications required to be filled out are too onerous and are inappropriate for peep show operations. Such applications call for information about citizenship, marital status (whether single, divorced or separated and dates of the relevant events), criminal records, financial responsibility, and sources of financing.

### Actions in This Court

The action of 1487 Amusement Corp. was commenced on October 10, 1972. Image Book's action was commenced October 11th. Both plaintiffs brought on their motions for preliminary injunction in this court by orders to show cause. A hearing was held on October 13th.

In an obvious attempt to avoid the effect of the rule restricting federal court injunctions directed to state court proceedings, 1487 Amusement Corp. did not specifically ask to have the pending state court proceedings against it and its employees enjoined. This plaintiff merely asked in general terms for an injunction against the enforcement of the Administrative Code licensing provisions. Indeed, 1487 Amusement Corp.'s moving papers were singularly vague about state court proceedings. They alluded to the state court injunction action, without giving full details, and said nothing about the criminal proceedings against 1487 employees.

Image Book's motion specifically sought an injunction directed against the state court injunction action, as well as requesting a general prohibition on enforcement of the licensing provisions. Image Book's papers failed to give the necessary details about the state court litigation.

At the hearing of October 13th, the Court requested the parties to file supplemental affidavits describing, among other things, the facts about the state court criminal and civil proceedings. It

should be noted that 1487 Amusement Corp. filed a supplemental affidavit denying the pendency of any criminal proceedings against it or its employees. Counsel for the City countered with an affidavit establishing the facts, described heretofore, regarding the criminal proceedings against employees of 1487 Amusement Corp. commenced before the institution of the federal court action, and still pending.

### Conclusions of Law

It is clear from the record as now developed that any injunction issued by this Court against enforcement of the licensing provisions of the Administrative Code would necessarily operate as a bar to the continuation of the civil and criminal proceedings now pending in the State courts, and commenced prior to the institution of the actions in this Court. Such an order by this Court would violate the rules limiting the power of a federal court to enjoin state court proceedings.

At the outset, it should be stated that the statutory prohibition on enjoining state court actions does *not* apply. This prohibition is found in 28 U.S.C. § 2283 and provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

As noted earlier, both of the present actions are brought under 42 U.S.C. § 1983.[6]

In Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), the Supreme Court held that an action under 42 U.S.C. § 1983 falls within the "expressly authorized" exception of 28 U.S.C. § 2283. In that case a three-judge federal court had been requested to enjoin a proceeding brought in a Florida court in which the Florida court was asked to close down a book store as a public nuisance. The plaintiff claimed violation of the First and Fourteenth Amendments. The three-judge court denied the motion before it, holding that by virtue of 28 U.S.C. § 2283 it was without power to enjoin the state court action. The Supreme Court reversed, holding that the absolute prohibition of 28 U.S.C. § 2283 does not apply to an action under 42 U.S.C. § 1983. But the Court stated that even in such an action there are restraints upon a federal court with respect to enjoining state court proceedings (407 U.S. at 243, 92 S.Ct. at 2162):

". . . [W]e do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding. These principles, in the context of state criminal prosecutions, were canvassed at length last Term in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 21 L.Ed.2d 669, and its companion cases. They are principles that have been emphasized by this Court many times in the past."

In other words, although there is no flat statutory prohibition against enjoining state court actions in a § 1983 case, there are restraints, which depend upon a weighing of the factors of "equity, comity, and federalism."

In Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), a three-judge federal court had enjoined a criminal prosecution in California for violation of that State's Criminal Syndicalism Act, holding that the Act was in

---

6. This section provides:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

violation of the First and Fourteenth Amendments. The Supreme Court reversed and remanded, holding that the judgment of the court below was

". . . a violation of the national policy forbidding federal courts to stay or enjoin pending state proceedings except under special circumstances." (401 U.S. at 41, 91 S.Ct. at 749).

Justice Black, writing for the Court, further stated, after a discussion of the role of comity in the federal system:

"This brief discussion should be enough to suggest some of the reasons why it has been perfectly natural for our cases to repeat time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions.

. . . . . .

"In all of these cases the Court stressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction. In addition, however, the Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate.'" (401 U.S. at 45–46, 91 S.Ct. at 751).

Justice Black further stated that even where a state statute appears to be "on its face" so vague or broad as to be a violation of the Constitution, or where there is the claim of a "chilling effect" on First Amendment rights, these circumstances do not of themselves justify federal court intervention in a pending state criminal proceeding. 401 U.S. at 50–51, 91 S.Ct. 746.

The Court indicated that ordinarily no such intervention would be permitted in the absence of "bad faith and harassment" (401 U.S. at 53, 91 S.Ct. 746), referring to an earlier Supreme Court decision, Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). The circumstances of bad faith and harassment in *Dombrowski* were that a Louisiana prosecutor, as there alleged, was engaged in a plan to prevent Negro citizens of Louisiana from asserting their constitutional rights, and that plaintiffs' offices had been raided and all their files and records seized. Despite a state court order vacating search and arrest warrants, the prosecutor continued to threaten new prosecutions with the use of the illegally seized materials.

The Supreme Court, through Justice Black, stated in Perez v. Ledesma, 401 U.S. 82, 85, 91 S.Ct. 674, 677, 27 L.Ed.2d 701 (1971):

"Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate."

■ The considerations outlined by the Supreme Court in these and other cases dictate the refusal of plaintiffs' motions for preliminary injunction in the present cases. Plaintiffs have made no showing of the kind of extraordinary circumstances and irreparable harm caused by the state proceedings, necessary to justify federal court intervention. There are proceedings already pending in the state courts affording plaintiffs an opportunity to raise their constitutional claims (*cf.* Younger v. Harris, 401 U.S. at 49, 91 S.Ct. 746). Plaintiffs cannot realistically claim irreparable harm from the state court proceedings when they have deliberately delayed or foregone their appellate rights in the state courts. In any event nothing is shown in the way of harm other than the normal results of litigation, which, under the teaching of the *Younger* case, do not create the extraordinary circumstances justifying federal court intervention.

There is no showing that the City is guilty of bad faith or harassment. The city officials have proceeded with delib-

eration and patience, and have delayed trial of the criminal proceedings for a reasonable time while the interpretation of the Administrative Code provisions and the constitutional questions were tested in the injunction action in the Supreme Court of New York County. The City, having succeeded before Justice Lane, and having waited in vain for plaintiffs to perfect their appeals, now intends to attempt enforcement of the injunction and also intends to bring the criminal cases to trial.

As to the number of prosecutions, two summonses have been issued to one of the employees of 1487 Amusement Corp., and one summons each has been issued to two other of 1487's employees, the last one shortly after the commencement of the federal court action. One summons each has been issued to two employees of Image Book. The situation here is essentially no different from what was involved in Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), a case which involved criminal prosecutions against several persons who operated a newsstand. The Supreme Court in that case held that the abstention doctrine of Younger v. Harris applies.

It must be recalled that the present case involves in part state court *civil* actions, whereas *Younger* involved a criminal prosecution only. A concurring opinion of Justices Stewart and Harlan in *Younger* questioned whether the same rule should apply with respect to state civil proceedings (401 U.S. at 55, 91 S. Ct. 746). But this concurring opinion appears to be speaking of purely private actions in state courts, where enforcement of criminal statutes and policies is not at all involved. In the present case it is the City of New York and its officials who are attempting to enforce City laws which are deemed of sufficient importance to have criminal sanctions. In this situation the rule of Younger v. Harris should apply. Wright, Law of

Federal Courts (2d ed.) § 52. In Lynch v. Household Finance Corporation, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), Chief Justice Burger and Justices White and Blackmun expressed the view that *Younger* applies to state civil litigation as well as to criminal proceedings (Dissenting Opinion).[7]

A final point to be dealt with is Image Book's application to have its motion heard by a three-judge court under 28 U.S.C. § 2281. This provision does not apply to city ordinances. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967).

Plaintiffs' motions for preliminary injunctions are in all respects denied.

So ordered.

---

7. The disagreement of these three Justices with the majority of the Court had nothing to do with this question.