Julian A. Hertz, J.
The following opinion determines three separate cases. Trials in the proceedings against defendants Mitchell and Woodman were held in Summons Part on January 23, 1973. At the request of the Assistant Corporation Counsel, decision was withheld pending trial of one or more similar cases, in connection with which the Corporation Counsel prepared an expanded presentation. Although the initial trial of Mitchell and Woodman did not deal with the constitutionality of sections B32-1.0 and B32-4.0 of the Administrative Code of the City of New York, they subsequently raised that issue. Decision was reserved, as was decision on a similar motion to dismiss made by counsel for defendant Aronowitz at a later trial.
Defendants are individuals found to have been managing various premises in New York City on the dates dn question. (Mitchell and Woodman, the bookstore at 500 Hudson Street on March 29, 1972 and November 29, 1972 respectively; and Aronowitz, the bookstore at 107 West 42nd St. on March 24, 1972, and 801 Eighth Avenue on January 16,17 and 19, 1973.) The facts disclose that these premises are retail stores for the sale of books in which coin-operated motion picture machines have been installed. While no admission is charged to enter or browse; the motion picture machines can only be used by the deposit of a coin to actuate the mechanism. Defendants assert that no one under 21 years of age is permitted to enter the store.
After years of undisturbed operation of so-called li peep shows ”, the Department of Consumer Affairs and the Police Department have proceeded against defendants, and many others, for maintaining places or premises of public amusement without a license, pursuant to sections B32-1.0 and B32-4.0 of the Administrative Code.
Subdivision a of section B32-1.0 provides that ‘ ‘ It shall be unlawful for any person to operate any place or premises of public amusement or sport, indoor or outdoor, or to exhibit any performance of public amusement or sport in any such place or premises, without a license therefor, upon payment of such fees as may be prescribed by the commissioner, and upon such terms and conditions as he deems necessary for proper regulation and good order.”
Section B32-4.0 states that “ Such licenses, in the discretion of the commissioner, may be subject to provisions and conditions which, in his judgment, may be essential for the welfare and benefit of the people of and visitors to the city, including provisions and conditions respecting the tickets or other tokens, *1055 entitling their holders to admission to such places, and respecting the hours of opening and closing thereof.”
Defendants challenge these provisions as violating their First Amendment constitutional rights. They assert that the showing of movies by means of coin-operated machines is a form of motion picture display constitutionally protected and that the government may not restrict such expression regardless of message, ideas, subject matter or content. Defendants also allege that the ordinance in question constitutes an impermissible prior restraint upon expression which gives the Commissioner of Consumer Affairs unlimited control over such expression, thus chilling the exercise of First Amendment rights.
It is clear that motion pictures are protected by the First Amendment of the United States Constitution. (Joseph Burstyn, Inc. v. Wilson, 343 U. S. 495; Kingsley Pictures Corp. v. Regents, 360 U. S. 684; Jacobellis v. Ohio, 378 U. S. 184; Interstate Circuit v. Dallas, 390 U. S. 676.) Exhibition of motion pictures by means of coin-operated projection machines is similarly encompassed within the First Amendment. (City of New York v.S & H Book Shop, 41 A D 2d 637; Soof v. City of Highland Park, 30 Mich. App. 400; 414 Theatre Corp. v. Murphy, 360 F. Supp. 34.)
Therefore, the question for consideration here is whether the licensing scheme which the city is attempting to enforce against the defendants herein constitutes a valid exercise of the police power in an area which clearly impinges on First Amendment freedoms.
The United States Supreme Court has frequently emphasized that “ a system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity.” (Carroll v. Princess Anne, 393 U. S. 175, 181; Bantam Books v. Sullivan, 372 U. S. 58; Freedman v. Maryland, 380 U. S. 51; New York Times Co. v. United States, 403 U. S. 713).
In Shuttlesworth v. Birmingham (394 U. S. 147, 149), the court held that a city ordinance making it an offense to participate in any parade or procession or other public demonstration without first obtaining a permit from the city commission and authorizing the members of the commission to refuse a permit if required to by public welfare, peace, safety, health, decency, good order, morals or convenience ” was unconstitutional, since it subjected the exercise of First Amendment freedoms to the prior restraint of a license without narrow, objective, and definite standards to guide the licensing authority. An *1056 ordinance, the court stated, which makes the peaceful enjoyment of freedoms guaranteed by the Constitution contingent upon the uncontrolled will of an official — as by requiring a license which may be granted or withheld in the discretion of such official — is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.
The court, in Shuttlesworth, distinguished an earlier case, Cox v. New Hampshire (312 U. S. 569), by explaining that the First and Fourteenth Amendments do not afford the same kind of freedom td those who would communicate ideas by conduct such as patrolling, marching, and picketing on streets and highways as they afford to those who communicate ideas by pure speech. Although a statute may be enacted which prevents serious interference with the normal usage of streets and parks, licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places are to be condemned. See also Saia v. New York (334 U. S. 558 ; Kunz v. New York, 340 U. S. 290, 294; Niemotko v. Maryland, 340 U. S. 268, 273; and Staub v. City of Baxley (355 U. S. 313, 322), in which the court stated that “ an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled, will of an official — as by requiring a permit or license which may be granted or withheld in the discretion of such official — is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.”
In an area affecting First Amendment rights, precision of regulation must be the touchstone. The vice of vagueness is particularly pronounced where expression is sought to be subjected to licensing. (Interstate Circuit v. Dallas, 390 U. S. 676, supra.) In Zwickler v. Koota (389 U. S. 241, 249, 250), the court, in citing NAACP v. Alabama (377 U. S. 288), declared that “ ‘ a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.’ ” (See, also, Grayned v. City of Rockford, 408 U. S. 104).
Vague or overly-broad licensing systems impinging on First Amendment freedoms have invariably been invalidated by courts faced with such laws. The court, in Soof v. City of Highland Park (30 Mich. App. 400, supra), asserted that a licensing ordinance which lacks precise standards and thus is incapable of objective measurement is inherently dangerous when First Amendment rights are involved, because the exercise of the pro *1057 tected rights is made entirely dependent upon the discretion of the licensing authority so that the situation becomes fraught with the hazard that the rights of expression will be unconstitutionally restrained. (In accord Marks v. City of Newport, Ky., 344 F. Supp. 675; Gall v. Lawler, 322 F. Supp. 1223; Griffin v. Mauney, 346 F. Supp. 545; Plematis v. City of Daytona Beach, Fla., 340 F. Supp. 617; OD v. Wilson, 323 F. Supp. 76; Dillon v. Municipal Ct., 4 Cal. 3d 860; Perrine v. Municipal Ct., 5 Cal. 3d 656.)
In Seattle v. Bittner (81 Wash. 2d 747), the court held that where an ordinance, which gave the city council discretion to deny a theatre license if it failed to find an applicant and all persons connected with the business to be of good character and provided that the license could not be granted to any person who had been convicted of a crime involving moral turpitude or intent to defraud within five years of the date of the application, did not purport to restrain only the showing of obscene motion pictures, and did not provide any of the procedural safeguards necessary if a particular motion picture is sought to be suppressed, the ordinance, unconstitutional on its face, was not a permissible form of "prior restraint.
A municipal ordinance making it unlawful to maintain or usé any table, box, stand, newspaper vending machine or other structure for the sale, display or storage of newspapers or magazines upon any sidewalk without obtaining a permit, requiring the applicant to file proof of insurance or proof of financial responsibility and imposing criminal sanctions for violation of the ordinance was held, in Gannett Co. v. City of Rochester (69 Misc 2d 619), to create an unconstitutional prior restraint on First Amendment rights, since the peaceful enjoyment of fréedoms guaranteed by the Constitution, including freedom of press, speech or religion, could not be conditioned upon the uncontrolled will of an official, as by requiring a permit or license which might be granted or withheld in the discretion of such official.
In People v. Dominick (68 Misc 2d 425), the case involved Buffalo city ordinances which required a license for the use of sound amplification equipment apd prescribed procedures to obtain the license. The court declared that the ordinances placed an onerous burden of showing proof of unusual and necessary importance and interest of the public welfare, health or safety and inflicted an unjustifiable chilling effect on free speech and were, therefore, unconstitutional. Moreover, the language (p. 429) “ disturbing or a nuisance to persons within the area *1058 of audibility ” as used in the ordinances regulating the use of sound equipment was unconstitutional on the ground it subjected the right of free speech to an unaseertainable standard.
In the instant situation, subdivision a of section B32-1.0 of the Administrative Code provides’ for a license to operate any place or premises of public amusement or sport “ upon payment of such fees as may be prescribed by the commissioner, and upon such terms and conditions as he deems necessary for proper regulation and good order.” Section B32-4.0 states that “ Such licenses, in the discretion of the commissioner, may be subject to the provisions and conditions which, in his judgment, may be essential for the welfare and benefit of the people and visitors to the city ”.
In short, these two sections give absolutely unlimited discretion to the- 'Commissioner of Consumer Affairs to establish any and all conditions he might wish for the granting of the required license, and he may do so without any standards whatsoever to guide him. The words of the ordinance would, in fact, permit him to set such terms and conditions as would make it impossible for any applicant to meet. As counsel for the Department of Consumer Affairs has admitted, of the few licenses sought by others not involved in these prosecutions, not a single one has been issued. Such a situation would be impermissible in any licensing scheme, but for one which concerns the exercise of First Amendment freedoms, as this court believes the defendants’ activities do, it is particularly offensive. On its face, sections B32-1.0 and B32-4.0 of the Administrative Code of the City of New York constitute an unconstitutional prior restraint of the right to free expression.
As the New York Court of Appeals has stated in Fenster v. Leary. (20 N Y 2d 309, 314), “ a statute whose effect is to curtail the liberty of individuals to live their lives as they would and whose justification is claimed to lie in the exercise of the police power of the State must bear a reasonable relationship to, some proportion to, the alleged public good on account of which this restriction on individual liberty would be justified. ’ ’ Citing Judge Fuld in People v. Bunis (9 NY 2d 1,4), the court declared, “ But, in order for an exercise of the police power to be valid, there must be ‘ some fair, just and reasonable connection ’ between it and the promotion of the health, comfort, safety and welfare of society.”
Thus, if the city were to enact an ordinance authorizing, in very specific terms, the granting of licenses to operate places, or premises of public amusement upon the meeting of specific *1059 health, safety and sanitary regulations, there being no discretion to withhold such licenses except for the failure of the applicant to conform to these specified regulations, the ordinance would be a proper exercise of the police powers. But that is clearly not the case here. The ordinance.in question provides such uncontrolled discretion in the hands of the Commissioner that he could, in effect, force all similar establishments out of business, should he so chóose.
In Avon 42d St. Corp. v. Myerson (352 F. Supp. 994), a companion section of the Administrative Code dealing with the licensing of motion pictures was declared invalid under the First Amendment for failure to provide ascertainable standards by which the Commissioner was to exercise his power to suspend, revoke, or fail to issue licenses. In the court’s view, vesting unfettered discretion in the Commissioner on the basis of the character of the applicant or for violations of public morality or decency was invalid in that such purported standards directly threatened the exercise of expression guaranteed by the First Amendment and constituted an invalid prior restraint.
In attempting to enforce sections B32-1.0 and B32-4.0 against operators of establishments containing coin-operated motion picture machines, the city has met with a singular lack of success. In City of New York v. S & H Book Shop (41 A D 2d 637, supra), the court in vacating an injunction granted to the city by a lower court, stated that “ On its face, section B32-1.0 of the New York City Administrative Code appears to vest unbridled discretion in the Commissioner to define and determine the standards for granting a license. There is thus presented, a serious question as to the constitutionality of the licensing provision which plaintiffs seek to enforce, and as such, a clear right to the drastic remedy of a temporary injunction has not been demonstrated.”
Subsequent to the trial of the instant cases, Judge Lasker of the United States District Court for the Southern District of New York, in an action involving consideration of sections B32r-1.0 and B32-4.0, wherein the plaintiff .sought to have chapter 32 of article 1 of title B of the Administrative Code declared unconstitutional and to enjoin enforcement of this provision, concluded that the ordinance at issue was constitutionally defective and granted plaintiff’s motion for a preliminary injunction against its enforcement. (414 Theatre Corp. v. Murphy, 360 F. Supp. 34, supra.)
Finally, some testimony was educed at the Aronowitz trial by the Corporation Counsel, the purpose of which was to demon *1060 strate that reason as well as uniformity underlies its established-procedures respecting those applications for licenses heretofore received. In addition, however, to the plain fact that no licenses have been issued, the testimony of the director of license issuance of the Department of Consumer Affairs was not such as would undermine the conviction of this court that there is ample reason for the rules against prior restraint vis-a-vis activities in those areas within the protection of First Amendment rights.
In view of all of the foregoing, this court holds that sections B32-1.0 and B32-4.0 of the Administrative Code of the City of New York are unconstitutional on their face in that they subject the exercise of freedoms protected by the First Amendment to the prior restraint of a license without narrow, objective and definite standards to guide the licensing authority. Consequently, defendants’ motions to dismiss the complaints against them are hereby granted.