499 F.2d 1155
 414 THEATER CORP., Appellee,
v.
Patrick MURPHY, Individually and as Police Commissioner of
the City of New York, Bess Myerson, Individually and as
Commissioner of the Department of Consumer Affairs of the
City of New York, Appellants.
 No. 641, Docket 73-2327.
 United States Court of Appeals, Second Circuit.
 Argued March 4, 1974.
Decided May 17, 1974.
 
 Jesse J. Fine, New York City (Norman Redlich, Corp. Counsel of the City of New York, New York City, Stanley Buchsbaum, Renee Modry, New York City, of counsel), for appellants.
 Herbert S. Kassner, New York City, (Kassner & Detsky, New York City), for appellee.
 Before LUMBARD, HAYS and OAKES, Circuit Judges.
 OAKES, Circuit Judge.
 
 
 1
 Defendants appeal from the grant by Judge Lasker below of a preliminary injunction proscribing the enforcement against plaintiff of Article 1 of Title B, Chapter 32 of the Administrative Code of the City of New York (article 1).[1] 414 Theatre Corp. v. Murphy, 360 F.Supp. 34 (S.D.N.Y.1973). Appellee brought its action below under 42 U.S.C. 1983 and its jurisdictional counterpart, 28 U.S.C. 1343(3), alleging that article 1 is unconstitutional on its face and as applied to activity carried on by appellee, activity alleged to be protected by the first amendment. Appellee sought a declaratory judgment of unconstitutionality under 28 U.S.C. 2201, as well as preliminary and permanent injunctive relief.
 
 
 2
 Appellee, the operator of an establishment containing coin-operated film machines, first applied to Judge Lasker for preliminary injunctive relief against the enforcement of article 1 in January of 1973. At that time, Judge Lasker 'denied the application without prejudice to renewal in order to permit the matter to be litigated in the state courts.' Id. at 35. He did so 'in the spirit of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and United States ex rel. Goodman v. Kehl, 456 F.2d 863 (2d Cir. 1972) with full awareness that denial was not mandated . . . since no criminal or civil cases involving 414 were pending in the state courts . . .' Id.
 
 
 3
 The issues being litigated in the state courts also concerned the constitutionality of article 1. This litigation arose in two contexts. Under B32-21.0 of article 1, violations of the article are punishable criminally by a fine of up to $500 and imprisonment for not more than six months. The uncontradicted affidavit of appellee below (supported by the facts as found in a case decided by the New York City Criminal Court to be discussed below) indicates that the appellants initiated a series of criminal prosecutions under this section early in 1972, some five years after the introduction of coin-operated movies into New York City. Only then was the operation of these 'peep shows' in various types of non-amusement businesses in the mid-Manhattan area, typically in paperback book stores, determined by appellants to be within the reach of the licensing provisions of article 1, five years after the Department of Licenses had already ruled that licenses were not required for such premises. See 1487 Amusement Corp. v. Redlich, 350 F.Supp. 822, 824 (S.D.N.Y.1972).
 
 
 4
 On the civil side, appellants sought and obtained New York Supreme Court injunctions, the first being issued on July 3, 1972, against various peep show operators; the injunctions required the operators to obtain licenses within 30 days or rid themselves of their coin-operated film machines. Failure to comply would, of course, lead to these operators being held in contempt of court, in addition to the other criminal and civil sanctions to which they had been or could be subjected. It was apparently the litigation involving these injunctions, presenting as it did the opportunity for presentation and decision of the constitutionality of article 1, that caused Judge Lasker to stay his hand initially.
 
 
 5
 On February 26, 1973, the appeal from one injunction against peep show operators in the State Supreme Court was decided, City of New York v. S & H Book Shop, Inc., 41 A.D.2d 637, 341 N.Y.S.2d 292 (1973), and resulted in reversal of the injunction. The Appellate Division avoided decision on constitutional grounds, finding instead that the City of New York had not demonstrated 'a clear right to the drastic remedy of a temporary injunction . . ..' Id., 341 N.Y.S.2d at 293. The Appellate Division indicated that a 'clear' right had not been demonstrated apparently because of the lack of probability that the City would prevail on the merits of the action, stating that
 
 
 6
 On its face, the New York City Administrative Code, B32-1.0 appears to vest unbridled discretion in the Commissioner to define and determine the standards for granting a license. There is thus presented, a serious question to the constitutionality of the licensing provision which plaintiffs seek to enforce . . ..
 
 
 7
 Id., 341 N.Y.S.2d at 293.
 
 
 8
 After this decision was handed down, appellee reapplied to Judge Lasker for preliminary injunctive relief. In granting that relief by decision dated June 28, 1973, and order dated July 11, 1973, Judge Lasker stated his belief that 'this application is now ripe for determination' since 'the state courts have had ample opportunity to consider the question in related cases and have declined to do so.' 360 F.Supp. at 36. This statement, viewed as a decision to proceed rather than abstain, was, we think, correct. The question of abstention is, of course, 'entirely separate from the question of granting declaratory or injunctive relief.' Lake Carriers' Association v. MacMullan, 406 U.S. 498, 509 n.13, 92 S.Ct. 1749, 1756, 32 L.Ed.2d 257 (1972). See Steffel v. Thompson, 415 U.S. 452, 474 n. 21, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Where the state court has deliberately avoided an interpretation of a statute which might save its constitutionality or moot the federal claim, the abstaining federal court may certainly reassert the jurisdiction it was retaining in order to reach the merits. Neither comity nor sound judicial administration require the abstaining federal court to wait indefinitely for state courts to determine the merits. See NAACP v. Gallion, 368 U.S. 16, 82 S.Ct. 4, 7 L.Ed.2d 85 (1961).
 
 
 9
 On July 20, 1973, nine days after Judge Lasker entered the order granting the preliminary injunction against enforcement of article 1, the New York City Criminal Court handed down a decision in certain consolidated prosecutions previously brought for violations of article 1. People v. Mitchell, 74 Misc.2d 1053, 346 N.Y.S.2d 495 (N.Y.C.Cr.Ct.1973). The Mitchell court, after hearing argument and adducing evidence respecting article 1 and its enforcement, dismissed the complaints by holding
 
 
 10
 that Sections B32-1.0 and B32-4.0 . . . are unconstitutional on their face in that they subject the exercise of freedoms protected by the First Amendment to the prior restraint of a license without narrow, objective and definite standards to guide the licensing authority.
 
 
 11
 Id. at 1060, 346 N.Y.S.2d at 502. The Mitchell decision, from a procedural standpoint, was apparently the result of a motion or motions under NYCPL 170.30(1)(f). As such, that decision was appealable as a matter of right to the Appellate Division of the New York Supreme Court by the City under NYCPL 460.10, subd. 1(a) & (c), which requires filing of a motion of appeal within 30 days. Remarkably in view of the appellants' position before us, no appeal from this decision was ever taken. Thus, one could be led to wonder whether the threat of the ordinance is not of more concern to the City than the validity.
 
 
 12
 To recapitulate, as of July 20, 1973, appellants had been denied injunctive relief to enforce civilly article 1 by the Appellate Division in a decision casting 'serious' doubt on the constitutionality of that provision, a federal district court had granted a preliminary injunction against the enforcement of article 1 by appellants on the ground of probable unconstitutionality, and a City court had ruled, with no appeal taken from its decision, that article 1 was overbroad and therefore unconstitutional on its face.
 
 
 13
 At this point the initial question we must face is whether the decision in People v. Mitchell, supra, renders the case before us moot, or whether, in other words, any 'case or controversy' under Article III can still be said to exist. It is not sufficient that the case did exist when the action was brought; generally speaking, 'The rule in federal cases is that an actual controversy must be extant at all stages of review . . .. See, e.g., Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); SEC v. Medical Comm. for Human Rights, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972); United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950).' Steffel v. Thompson, 42 U.S.L.W. at 4359 n.10, (94 S.Ct. at 1216). But the dismissal of a criminal complaint on the basis of the unconstitutionality of the law allegedly violated is, strictly speaking, only a determination of the rights of the defendant who is a party thereto. Nothing precludes the City from bringing other criminal actions under the ordinance already found unconstitutional in one action, although the probable effect of stare decisis will be another dismissal.[2] The City, moreover, might seek to enforce the ordinance through civil enforcement actions rather than criminal actions, something indeed which it has just done. See City of New York v. Bullard, N.Y.L.J., Dec. 3, 1973, at 2, col. 4 (Sup.Ct.); City of New York v. Pink Pussy Cat, Inc., N.Y.L.J., Dec. 3, 1973, at 2, col. 3 (Sup.Ct.); City of New York v. Cohen, N.Y.L.J., Sept. 20, 1973, at 2, col. 2 (Sup.Ct.) Thus, the issue has hardly been mooted.[3]
 
 
 14
 What remains then is the question of the propriety of preliminary injunctive relief. The court below applied the principal proper test as to preliminary injunctive relief-- the demonstration of probable success on the merits and irreparable harm if the relief is not granted. See Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co., 476 F.2d 687, 692 (2d Cir. 1973). And we must review its conclusions on the basis of whether there has been an abuse of discretion or a clear mistake of law. Exxon Corp. v. City of New York, 480 F.2d 460, 464 (2d Cir. 1973); Dino DeLaurentiis Cinematografica S.p.A. v. D-150, Inc., 366 F.2d 373 (2d Cir. 1966); Wright & Miller, Federal Practice and Procedure, Civil 2962.
 
 
 15
 As to the probability of success on the merits, we have no difficulty in affirming the district court. As noted in its decision, 360 F.Supp. at 37, and in the decision of Judge Hertz in People v. Mitchell, supra, the language of the instant ordinance is almost identical to that struck down in Shuttlesworth v. City of Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). There, as here, the total lack of standards governing the issuance, renewal, and revocation of licenses 'conferred upon the City Commission virtually unbridled and absolute power.' Id. at 150. The dissemination of material protected by the first amendment cannot be left to the unguided discretion of a city commissioner. See Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1962); Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958).
 
 
 16
 As to whether irreparable harm will occur if preliminary relief is not granted, the appellants suggest first that there can be no irreparable harm until appellee has actually been denied a license, for if the license is granted, appellee will suffer no harm.[4] This might be a persuasive argument were it not for the nature of the licensing procedure here involved. Appellee, which has been showing its peep show films during the period when the commissioner held them not subject to the ordinance, must now cease showing the films while the application and licensing process go on.[5] Yet there is no time limit within which the commissioner must act to grant or deny the application. As noted in People v. Mitchell, supra, not one license had been issued by the Department at the time of the injunction order below, and we are aware of none granted since then. Indeed, it is alleged that applications are held up for more than six months. This forced discontinuance of a first amendment right pending a protracted license determination is itself a prior restraint, see Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), and involves irreparable injury to the public's as well as the appellee's first amendment rights.
 
 
 17
 The appellants claim next that appellee is not threatened with imminent prosecution and thus an injunction is not warranted. See Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1942). See also Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971). As to this point, however, we feel bound to accept the district court's finding of fact that appellants are refraining from enforcing the ordinance against appellee only pending determination of the motion for preliminary relief. In light of the appellants' multi-faceted and widespread enforcement of this ordinance, and attempted civil and criminal enforcement against peep show operators, we cannot say that it was clearly erroneous to conclude that appellee was threatened with imminent prosecution.
 
 
 18
 Upon the facts of this case, if the ordinance were enforced against appellee, appellee would be required to choose between continuing without a license in the business of offering its films, thereby subjecting itself and its employees to the threat of criminal and civil prosecution, and removing the film machines from its premises permanently, obviating the need for a license, or temporarily, pending the determination of a license application. The latter possibility-- removing the film machines-- involves a deprivation of appellee's and the public's first amendment rights to show and to view films, and in itself constitutes irreparable injury justifying injunctive relief, because there is no means to make up for the irretrievable loss of that which would have been expressed. Cf. A Quaker Action Group v. Hickel, 137 U.S.App.D.C. 176, 421 F.2d 1111, 1116 (1969). Moreover, the other option-- violating the law to exercise one's constitutional rights and awaiting the sure hand of the law-- itself may cause, as it is alleged to cause, irreparable injury both economic (in the form of loss of revenue because customers are fewer and increase in costs due to the difficulty of finding employees willing to risk arrest, prosecution and possible imprisonment) and personal (the freedom to exercise first amendment rights without genuine fear of prosecution). Where other plaintiffs have faced the similar situation of being required to forego constitutionally protected activity in order to avoid arrest, the Supreme Court has found irreparable injury. See Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Hygrade Provision Co., Inc. v. Sherman, 266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402 (1925); Terrace v. Thompson, 263 U.S. 197, 214, 216, 44 S.Ct. 15, 68 L.Ed. 255 (1923). So also do we find the position of appellee, 'between the Scylla of intentionally flouting (the ordinance) and the Charybdis of foregoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding.' Steffel v. Thompson, 415 U.S. at 462, 94 S.Ct. at 1217, to cause irreparable injury where the result is the stifling of first amendment expression.
 
 
 19
 Never at a loss, appellants suggest that if prosecution is imminent then there is no irreparable injury so 'great and immediate' as to warrant injunctive relief, because adequate protection will be provided by the city or state court proceedings. See Younger v. Harris, 401 U.S. 37, 46, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). We do not, however, believe-- as we shall attempt to demonstrate-- that the Younger sextet (see note 6 infra) forecloses preliminary injunctive relief in this case. The recent Supreme Court decision in Steffel v. Thompson, supra reinforces this conclusion that such relief is appropriate here. So does Hogge v. Members of City Council, 482 F.2d 575 (4th Cir. 1973), cert. denied sub nom. Blair v. Joseph, 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974) (threat to livelihood in operating massage parlors and to freedom from prosecution 'real' and 'imminent'; preliminary injunctive relief upheld).
 
 
 20
 Younger v. Harris, supra, expressly declined to consider what circumstances were required for federal injunctive relief 'when there is no prosecution pending in state courts at the time the federal proceeding is begun.' 401 U.S. at 41. Some courts, however, have read Younger et al. as requiring 'great and immediate' irreparable harm to justify injunctive relief when prosecution is only threatened, see e.g., Becker v. Thompson, 334 F.Supp. 1386, 1389-1390 (N.D.Ga.1971), aff'd, 459 F.2d 919 (5th Cir. 1972) (denial of injunction not appealed), rev'd sub nom. Steffel v. Thompson, supra; most courts have restricted Younger's effect to cases where state proceedings are pending, see Note, Implication of the Younger Cases for the Availability of Equitable Relief When No State Prosecution is Pending, 72 Colum.L.Rev. 874, 895-96 & n. 135 (1972).[6] Most recently the Supreme Court in Steffel v. Thompson, 415 U.S. at 462, 94 S.Ct. 1209, again declined to consider the appropriateness of injunctive relief where the prosecution was only threatened and not pending.
 
 
 21
 One basis for determining that preliminary injunctive relief is proper in this case stems from the fact that, unlike Younger, here there is no pending state prosecution against appellee. Younger reiterated the traditional rule that injunctions against pending state prosecutions could only be justified when the irreparable injury was both great and immediate. In this way the important principles of equity, comity and federalism would be served by not interfering with and disrupting state proceedings. 401 U.S. at 44. This holding, however, never signified that the protection of constitutional rights was to be sacrificed to the principles of comity and federalism; rather the Younger sextet recognized that, while federal courts are "the primary and powerful reliances for vindicating every right given by the Constitution, the laws, and treaties of the United States," Steffel v. Thompson, 415 U.S. at 464, 94 S.Ct. at 1218, quoting Frankfurther & Landis, The Business of the Supreme Court 65 (1928), once a state criminal prosecution has begun it normally provides an effective forum for the determination of constitutional rights. This is true even in prosecutions involving regulation of expression protected by the first amendment.
 
 
 22
 However, when prosecution is only threatened and not pending, the principles given effect in Younger do not basically militate against federal injunctive relief. The principles of comity and federalism and considerations of equity practice 'have little force in the absence of a pending state proceeding.' Lake Carriers' Association v. MacMullan, 406 U.S. at 509. See also Steffel v. Thompson, 415 U.S. at 462, 94 S.Ct. 1209. If there is no pending prosecution, a declaration or injunction will not interfere with or interrupt the state criminal process; rather it will act only upon the executory enforcement of a law in the same manner as an injunction against the enforcement of a law without criminal penalties. This is particularly pertinent here, for there is no guarantee that the appellants will seek to enforce the ordinance in a criminal proceeding; rather they could, as they have in other instances, bring a civil enforcement action. Yet to require the federal courts to withhold equitable relief, to allow state courts in actions not yet instituted to determine constitutional questions, would be the equivalent of requiring exhaustion of judicial remedies, which is specifically not required of 1983 actions. Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).
 
 
 23
 On the other side of the coin, absent a pending prosecution the state courts are no longer equally able to protect the rights of the threatened party. Where a good faith prosecution is already pending, although the federal courts will not grant relief, the constitutional claims will necessarily be resolved by the state in an orderly procedure. Where the prosecution is only threatened, however, if the federal court does not grant relief, there is a distinct probability that the individual will forego his claimed constitutionally protected activities, and the constitutional claims will never be resolved at all. Cf. Hull v. Petrillo, 439 F.2d 1184, 1186-1187 n. 1 (2d Cir. 1971). In Dombrowski v. Pfister, supra, the Supreme Court acknowledged the 'chilling effect' that an overboard statute affecting first amendment rights may have on free expression. While Younger turned aside the suggestion in Dombrowski that such a chilling effect would itself justify the grant of injunctive relief, the fact remains that the effect of an overbroad statute, such as the ordinance here appears to be, is more serious when no prosecution is pending. This is so, again, because when there is a pending prosecution it will determine the constitutional rights, whereas if there is no pending prosecution, the alleged rights are often 'chilled' in the sense of never being exercised, and hence never passed upon by any court. Individuals have an interest in avoiding undergoing criminal prosecution to safeguard their rights, an interest which is in itself not unworthy of protection. See Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d (1968); Hygrade Provision Co. v. Sherman, supra; Terrace v. Thompson, supra ('They are not obliged to take the risk of prosecution, fines and imprisonment and loss of property in order to secure an adjudication of their rights,' 263 U.S. at 216); Hogge v. Members of City Council, supra.
 
 
 24
 Finally, what is before us here is not a permanent injunction against enforcing this ordinance against anyone until the City properly limits it, see Younger v. Harris, 401 U.S. at 51; rather this is merely a temporary injunction against enforcing the ordinance against appellee pending a determination on the merits. As such it merely maintains the status quo which existed for the five years that the City did not interpret the ordinance as applying to premises with peep shows.
 
 
 25
 Upon all these considerations, therefore, we find that the intrusion on the City's administration of its criminal laws by this preliminary injunction is minimal and that the values sought to be protected in Younger are in no way intruded upon by affirmance here.
 
 
 26
 Order affirmed.
 
 HAYS, Circuit Judge (dissenting):
 
 27
 This case does not present a situation which is yet ripe for decision.
 
 
 28
 There is no indication that the City would deny plaintiff's application for a license. If it did so, there are adequate opportunities for administrative review.
 
 
 29
 The City ordinance which is called into question is not unconstitutional on its face, since it does not purport to limity any First Amendment right. It is entirely proper to require that places of amusement be licensed even if some of the performances presented are protected by the First Amendment. See Cox v. New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). So far as appears on the face of the ordinance, the license could be denied only on proper grounds of protection of public health and safety.
 
 
 
 [1]
 Article 1, in pertinent part, reads as follows:
 B32-1.0 License required.-- a. It shall be unlawful for any person to operate any place or premises of public amusement . . . without a license therefor, upon payment of such fees as may be prescribed by the commissioner, and upon such terms and conditions as he deems necessary for proper regulation and good order.
 B32-4.0 Conditions of license.-- Such licenses, in the discretion of the commissioner, may be subject to provisions and conditions which, in his judgment, may be essential for the welfare and benefit of the people of and visitors to the city . . ..
 B32-21.0 Violations.-- Except as otherwise specifically provided therein, any person who shall violate, or refuse or neglect to comply with any provision of this article, upon conviction thereof, shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than six months, or by both, and any such person, also, for each offense, shall be subject to the payment of a penalty of two hundred fifty dollars to be recovered in a civil action brought in the name of the city.
 
 
 [2]
 Such prosecutions under an ordinance found unconstitutional in previous prosecutions, however, might well be subject to injunction from a federal court as 'bad faith' or harassment actions. See Younger v. Harris, 401 U.S. 37, 48-49, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). See also Krahm v. Graham, 461 F.2d 703 (9th Cir. 1972); Callahan v. Sanders, 339 F.Supp. 814 (M.D.Ala.1971)
 
 
 [3]
 The fact that no prosecution has yet actually been brought does not prevent this from being a proper case or controversy under Article III. In Younger the plaintiffs against whom no prosecutions were pending had not alleged or demonstrated a threatened prosecution. 401 U.S. at 41-42. In Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971), there was no allegation, much less demonstration, of threatened or imminent prosecutions. See also Lecci v. Cahn, 493 F.2d 826, 828 (2d Cir. 1974). Cf. Canal Theatres, Inc. v. Murphy, 473 F.2d 4, 5-6 n. 2 (2d Cir. 1973). Steffel v. Thompson, 415 U.S. 452, 458-460, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), made it clear that in the situation we have here, where a plaintiff has demonstrated an actual threat of enforcement, a case or controversy exists
 
 
 [4]
 The district court found that 414 Theater Corp. had not applied for a license and that it had no intention of doing so. In exhibit A annexed to appellant Myerson's affidavit below, however, appear application papers submitted to the City by the '414 W. 42nd St. Theater Corp.'-- papers the appellants here argue show that 414 has in fact submitted its case to the administrative process. From the record and Judge Lasker's finding we can only assume that appellee here is a different corporate entity from the corporation that applied for the license. In any case, appellants' argument that appellee, having submitted its application, must be required to exhaust its administrative remedies is frivolous, because appellee clearly states an otherwise good cause of action under 42 U.S.C. 1983. See Gibson v. Berryhill, 411 U.S. 564, 574-575, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). See generally Monaghan, First Amendment 'Due Process,' 83 Harv.L.Rev. 518, 540-41 (1970)
 
 
 [5]
 The instructions for applying for a license note at the outset that
 The filing of an application does not constitute permission to operate. A license must actually be in the possession of the licensee before any operation may be legally conducted.
 
 
 [6]
 Of the other Younger cases, Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), while a suit for a declaratory judgment, involved a pending criminal prosecution against the parties seeking relief; in Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971), on the other hand, not one of the plaintiffs had ever been prosecuted, charged, arrested or threatened with prosecution under the statute under review; the majority in Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), treated the case as one in which a prosecution was pending; Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971), also involved a pending prosecution, and despite allegations of bad faith and harassment, the court below had made no findings of great and immediate irreparable harm so as to justify injunctive relief; in Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971), the plaintiff was already under indictment, which the Court treated as a pending prosecution, and therefore absent a showing of great and immediate irreparable harm the preliminary injunction was improper. Thus, none of the sextet (sometimes referred to as a 'septet' since Samuels v. Mackell also included Fernandez v. Mackell) involved the dual factual bases present here of (1) threatened (but not pending) criminal prosecution and (2) irreparable harm