UNITED STATES ex rel. Edwin A. GOODMAN, Petitioner-Appellee,

v.

H. William KEHL, Sheriff of New York County, et al., Respondents-Appellants.

No. 704, Docket 72–1266.

United States Court of Appeals, Second Circuit.

Argued on Motion for Stay March 9, 1972.

Decided March 14, 1972.

---

864

Michael David Ratner, New York City (Rhonda Copelon Schoenbrod, Peter Weiss, Doris Peterson, New York City and Center for Constitutional Rights, of counsel), and Jeremiah S. Gutman, New York City (New York Civil Liberties Union, of counsel), for petitioner-appellee.

Michael R. Juviler, Asst. Dist. Atty. (Frank S. Hogan, Dist. Atty., New York County, of counsel), for respondents-appellants.

Asa D. Sokolow, New York City, for New York Lawyers' Committee for Civil Rights under Law, as amicus curiae.

Butler, Jablow & Geller, New York City, for Writers Guild of America East, Inc., as amicus curiae.

Before FRIENDLY, Chief Judge, TIMBERS, Circuit Judge, and JAMESON, District Judge.*

FRIENDLY, Chief Judge:

 This case illustrates the unfortunate clashes that can result from premature federal court interference with the orderly functioning of state judicial processes. It was to minimize these in the field of federal habeas corpus that Congress provided, 28 U.S.C. § 2254(b):

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

Recitation of the facts will show that this salutary mandate was inadequately heeded here.

Petitioner is Edwin A. Goodman, who for some twenty-two months has been the general manager of radio station WBAI-FM in New York City. In this capacity, he was served with a subpoena *duces tecum,* issued by the Supreme Court of the State of New York for New York County, ordering him to produce in court:

> All Tape Recordings, Program Logs and all Material Broadcast with relation to the Riots at the Manhattan House of Detention for Men (Tombs) during the period between October 2, 1970 to October 5, 1970.[1]

These materials were sought by the District Attorney for New York County for use in the early trial of a number of state criminal indictments that grew out of the riots which occurred at the House of Detention during the period stated. It is the belief of the District Attorney's office that the tapes include telephone conversations from some of those named in the indictments, as well as other inmates of the House of Detention, to employees of WBAI,[2] embodying descriptions of the inmates' participation and other criminal plans and conduct. Among the tapes were recordings of telephone calls from inmates which were broadcast by WBAI and could have been taped by any listener at the time, although petitioner says that the material subpoenaed included much more than was broadcast.[3]

---

* Of the United States Court for the District of Montana, sitting by designation.

1. A subpoena, not authorized by the State Supreme Court, was originally served on January 28, 1972, returnable January 31, 1972. By agreement of counsel, no enforcement of the subpoena was sought on the return day in order to allow WBAI an opportunity to search its archives for the desired tapes. It was subsequently determined that the original subpoena had expired by consent of counsel on January 31. An identical updated subpoena, authorized by the state court, was then served on petitioner and WBAI, returnable on February 28, 1972.

2. The District Attorney's belief seems likely to be correct in light of the statement, contained in the motion to quash the subpoena submitted by petitioner and WBAI to the Supreme Court for New York County, see *infra,* that the tapes

contain on-the-scene reports by news-gathering staff of WBAI, interviews with identified and unidentified correction officials, ex-convicts and other persons, *phone calls from the same and other unknown persons*; and documentaries . . . (emphasis supplied).

3. The State claims that WBAI had offered the tapes for sale. When a detective in the District Attorney's office ordered a set, WBAI declined to furnish one, writing that the tapes "are made available as a service to individual listeners, exclusively for their private listening pleasure and enjoyment." At the hearing before us counsel submitted a statement by Mr. Goodman that "the tapes concerned here have not been made available or sold or distributed in whole or in part to anyone." Although it is difficult to reconcile this with WBAI's letter, we need not resolve this issue in view of our disposition of the case.

Petitioner and WBAI chose not to comply with the subpoena with respect to the tapes,[4] even of calls that had been broadcast; rather they sought to quash the subpoena, contending essentially that it violated rights as news-gatherers and news-reporters secured to them against the State by the First Amendment of the Federal Constitution by way of the Fourteenth, by various provisions of the New York Constitution, and by § 79–h of the N.Y.Civil Rights Law (McKinney's Consol.Laws, c. 6, 1971). The motion to quash was heard by Justice Culkin of the Supreme Court for New York County on February 28, 1972, and was denied in a brief opinion on March 2. An appeal was immediately filed. Justice Culkin refused to stay further action to enforce the subpoena and ordered contempt proceedings to be held the next day, March 3. On the morning of that day, petitioner applied to Justice McNally of the Supreme Court, Appellate Division, First Department, for a stay of the contempt proceedings pending decision of petitioner's appeal from the denial of the motion to quash and of a stay motion made by petitioner to the full panel of the Appellate Division. This application was also denied. Petitioner then appeared before Justice Culkin in the contempt proceedings and there stated—for himself and WBAI—that it was his "intention not to produce these materials in question, until such time as we have exhausted our legal resources." The court, upon petitioner's refusal to comply with its final direction to produce the tapes, ordered him to "do thirty days in the civil jail until such time as [he produces] the tapes," and fined the station $250. Justice Culkin denied applications for a stay of the sentences and for petitioner's release on bail or parole pending appeal of the contempt orders to the Appellate Division, and petitioner was remanded to the County Sheriff to commence serving his sentence.

The following morning, March 4, 1972, another application was made to Justice McNally of the Appellate Division, this time for a stay of petitioner's jail sentence or, alternatively, his release on bail or parole pending determination of the appeal. Justice McNally denied the application on the ground that the prior application for the same relief to Justice Culkin deprived him of jurisdiction to act as a single justice. He did, however, refer the application to a full panel of the Appellate Division for consideration on Tuesday, March 7, 1972, together with his previous denial of a stay of the contempt proceedings. Application for similar relief was also made on Saturday, March 4, to Chief Judge Fuld of the Court of Appeals of New York. He, too, refused, on the ground that neither he nor the Court of Appeals had jurisdiction to issue such a stay, apparently because of the absence of any final order from the Appellate Division with respect to the denial of the motion to quash the subpoena and the judgment and sentences of contempt.

Without awaiting the hearing in the Appellate Division on Tuesday, March 7, petitioner turned to federal District Judge Frankel, who for that week was the criminal motions judge for the District Court for the Southern District of New York, wherein petitioner was incarcerated. Judge Frankel, who was at his home in Larchmont, New York, agreed to hear an application for a writ of federal habeas corpus on Sunday morning at Larchmont Town Hall, although this would almost necessarily prevent the District Attorney from preparing a proper return, 28 U.S.C. § 2243, or researching authorities. Without detailing all that followed, suffice it to say that the District Attorney's office did receive notification and appeared at the Sunday morning hearing.

■ The relief requested was release of petitioner on his own recognizance

---

4. Copies of the subpoenaed program logs had been turned over to the District Attorney on or about February 7, 1972, see note 1 *supra*.

pending final determination of his state court appeals concerning the validity of the subpoena. Judge Frankel granted this, subject to his power to correct or alter his order on short notice. At the hearing the District Attorney argued first that issuance of federal habeas corpus would be improper because petitioner had not fully exhausted his available state court remedies as required by 28 U.S.C. § 2254(b). After some initial confusion, emanating in no small part from the haste with which the hearing had been held, with respect to the precise nature of the applications and rulings in the state courts on Friday and Saturday, and the possibility of further state court action that might release petitioner pending determination of his state appeals, the district judge finally agreed that such relief might indeed result from action by the panel of the Appellate Division at the hearing scheduled for Tuesday, March 7. Nevertheless, he took the view that because of the absence of any available state court remedy from Sunday until the following Tuesday, petitioner had satisfied the exhaustion requirement. He considered that petitioner had raised substantial First Amendment questions with respect to the "so-called 'journalist's privilege,'" now under consideration by the Supreme Court, on quite different facts, in Caldwell v. United States, 434 F.2d 1081 (9 Cir. 1970), cert. granted, 402 U.S. 942, 91 S.Ct. 1616, 29 L.Ed.2d 109 (1971); Branzburg v. Pound, 461 S.W. 2d 345 (Ky.1970), cert. granted sub nom. Branzburg v. Hayes, 402 U.S. 942, 91 S.Ct. 1616, 29 L.Ed.2d 109 (1971); and In re Pappas, Mass., 266 N.E.2d 297, cert. granted, 402 U.S. 942, 91 S.Ct. 1619, 29 L.Ed.2d 110 (1971), which might ultimately be appropriate for full-blown consideration in a subsequent federal habeas corpus proceeding and that, due to the shortness of petitioner's sentence, it was necessary to release him on bail *instanter* if "the full sweep of [the federal court's] jurisdiction" was to be preserved. In other words, he was fearful that, without action on his part, the sentence might run before its legality was determined.[5] He thought that to require petitioner either to surrender his First Amendment claims or remain in jail pending their determination would have a serious "chilling effect" on the assertion of such constitutional rights by petitioner and others. He also found that there were "substantial questions" whether petitioner had been accorded procedural due process in the state court contempt proceeding and on his initial application for bail because of the summary fashion in which he thought the state court may have acted. Finally, he was critical of the state court's failure to give any reasons for the denial of bail[6] and of what he considered the inability of the District Attorney's office to offer cogent reasons for keeping petitioner in jail pending determination of his state appeals.[7] He ordered petitioner released from custody immediately,

---

5. It is fairly clear that service of the sentence would not moot petitioner's constitutional claims for purposes of direct appellate review in the state courts or an application for certiorari to the United States Supreme Court. See Sibron v. New York, 392 U.S. 40, 51–53, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). The availability of collateral relief in the lower federal courts if this failed might stand differently because of the requirement that a petitioner be in custody.

6. The district judge might well have considered the probability that the state judge could properly have thought that, whatever the Supreme Court might decide in *Caldwell* and its companion cases, petitioner's First Amendment claims with respect to material that had been broadcast were frivolous. While, as stated, petitioner claims the subpoena went beyond this, he declined to produce even the tapes of the broadcast conversations.

7. The judge said that, in view of Mr. Goodman's announced determination not to produce the tapes until the legality of the subpoena had been finally decided, "no good" could come from keeping him in jail. The same could be said in the case of any witness asserting with equal determination a colorable claim of privilege, *e. g.*, under the self-incrimination clause of the Fifth Amendment. This ignores that the very purpose of such a sentence of

declining even to stay his order pending an application for such a stay to one of the judges of this court, two of whom reside within a half hour's drive from the Larchmont Town Hall. The County Sheriff complied with this order.

The case first came before this court on Thursday, March 9, on the District Attorney's motion to stay the judge's order. The arguments were essentially the same as those made before him. Since it appeared likely that the practical effect of our disposition of the motion for a stay would be a final determination of the validity of the order, we withheld decision on the motion and directed the parties to submit any further briefs they desired by Monday, March 13. We requested counsel to convey to the Appellate Division our view that the federal proceedings in no way restricted that court's freedom of action on the appeal from Justice Culkin's denial of a stay, without in any way intimating what that should be. Apparently this word did not reach the Appellate Division, which, on that very afternoon, handed down a decision, 329 N.Y.S.2d 492, a copy of which is appended as an addendum. As will be seen, three justices thought Judge Frankel's action had rendered the appeal "academic as long as the ruling of the District Court remains in effect." Two justices, considering that "the Federal court had no business intervening in this matter," would have granted the stay.

■ With respect to a good many of the fundamentals, we are not in disagreement with the district court. The Eighth Amendment to the Federal Constitution directs that "[e]xcessive bail shall not be required." Although this provision of the Bill of Rights has not yet been held by the Supreme Court to be one of those made applicable to the states through the Fourteenth Amendment, we entertain little doubt that it will be. See Schilb v. Kuebel, 404 U.S. 357, 365, 92 S.Ct. 479, 484–485, 30 L.Ed. 2d 502 (1971). Likewise we perceive no constitutional distinction between requiring excessive bail and denying bail altogether in the absence of legitimate reasons. Compare Carlson v. Landon, 342 U.S. 524, 569, 72 S.Ct. 525, 96 L.Ed. 547 (1952) (Burton, J., dissenting); Wansley v. Wilkerson, 263 F.Supp. 54 (W.D. Va.1967). Consequently, "under the Eighth Amendment, where bail is fixed . . . , it must not be excessive, and further, where bail is not a matter of right, the [state] court may not arbitrarily or unreasonably deny bail." United States ex rel. Covington v. Coparo, 297 F.Supp. 203, 206 (S.D.N.Y. 1969) (Weinfeld, J.). Federal habeas corpus has been recognized to be an appropriate remedial device for bringing before a federal court challenges to state bail practices before and during a criminal proceeding. See, e. g., Mastrian v. Hedman, 326 F.2d 708 (8 Cir.), cert. denied, 376 U.S. 965, 84 S.Ct. 1128, 11 L.Ed.2d 982 (1964); United States ex rel. Shakur v. Commissioner of Corrections, 303 F.Supp. 303, 306 (S.D.N.Y.), aff'd, 418 F.2d 243 (2 Cir. 1969), cert. denied, 397 U.S. 999, 90 S.Ct. 1144, 25 L.Ed.2d 408 (1970). How far, in light of the rather obvious thrust of the Eighth Amendment toward criminal prosecutions, these principles apply to orders for civil contempt [8] whose purpose

civil contempt—with the witness, in the familiar phrase, holding the key to the jail in his pocket—is to promote serious second thought whether resistance to a court's process is justified. See Yates v. United States, 355 U.S. 66, 74–75, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957).

8. Whether the order here at issue was for civil or criminal contempt is not completely clear. On the one hand, the mandate signed by Justice Culkin (but prepared by the District Attorney's office) simply directs petitioner to serve thirty days and there appears to be nothing conditional about the $250 fine levied against WBAI. On the other hand, Justice Culkin directed petitioner to serve his sentence in the civil jail and orally indicated at the time of sentencing that petitioner would be freed as soon as he produced the tapes. The District Attorney's office promised before Judge Frankel that if the tapes were surrendered, it would "abate the

is not to punish but to secure obedience to a court's processes may be a different question, see Uphaus v. Wyman, 360 U.S. 72, 81, 79 S.Ct. 1040, 3 L.Ed.2d 1090 (1959); United States ex rel. Carter v. York, 430 F.2d 1329 (2 Cir. 1970), and note 7 *supra*, to which, in its speedy determination, the district court did not address itself. We are not obliged to decide this, for even if we assume the answer in petitioner's favor, the decisive element here is that the federal court intruded before the state courts had a reasonable time to act.

 Federal courts have consistently recognized that the requirement, contained in 28 U.S.C. § 2254(b), that adequate state remedies must have been exhausted, is fully applicable when federal habeas corpus is sought to enlarge a state prisoner while he is awaiting trial, see, e. g., United States ex rel. Shakur v. Commissioner of Corrections, *supra*, 303 F.Supp. at 305, or is appealing a judgment leading to confinement, see United States ex rel. Carter v. York, *supra*, 430 F.2d 1329; cf. In re Shuttlesworth, 369 U.S. 35, 82 S.Ct. 551, 7 L.Ed. 2d 548 (1962). The considerations of federal-state comity that militate against federal court intervention, by way of habeas corpus, with respect to state court convictions which have not received final state appellate consideration apply with equal force in the context of state court bail processes in pending proceedings and with even greater force with respect to an order of civil contempt for failure to produce evidence to be used in the trial of a state indictment. Here the judge intervened while the state bail process was still in midstream; he acted despite the fact that a full panel of the Appellate Division was scheduled to hear petitioner's applications for relief pending appeal only two days later and without any indication that petitioner would not then receive such relief as was appropriate. The con-

fusion and irritation thus needlessly engendered are sufficiently shown by the Appellate Division's opinion.

 We do not minimize the inconvenience to Mr. Goodman of remaining in the civil jail, unless he chose to unlock it, even for the two days before the Appellate Division would hear his application and such further period as that respected tribunal might need to decide. But courts, particularly collegial courts of appeal, cannot be expected to operate as such on a seven day week even when confinement is at issue. Some time is needed for the court to convene, whether in regular or, if need be, in special session, for deliberation, and for consultation. Indeed, neither this court nor the Supreme Court could pass muster on a test so severe as that which the district judge imposed upon the appellate courts of New York. To be sure, with respect to bail as with other constitutional rights, "an inordinate and unjustified delay in the state corrective process may well result in the frustration of petitioner's rights and be such a circumstance as to render that process ineffective," Dixon v. Florida, 388 F.2d 424, 425 (5 Cir. 1968); see also, e. g., Jones v. Crouse, 360 F.2d 157 (10 Cir. 1966); Odsen v. Moore, 445 F.2d 806 (1 Cir. 1971), and in such cases the exhaustion requirement will be deemed satisfied without awaiting the state court's action, as 28 U.S.C. 2254(b) contemplates. Here, even taking account of the shortness of petitioner's sentence, we find not the slightest indication of dilatoriness in New York's judicial processes. On the contrary, the Appellate Division scheduled exceedingly quick consideration of petitioner's applications for interim relief pending determination of his appeals of the denial of the motion to quash and of the contempt order, as well as expedited consideration of the appeals themselves.

contempt proceeding and have [petitioner] taken out of custody immediately." The two dissenting justices in the Appellate

Division considered the contempt to be civil, and there is no indication that the majority disagreed.

In what proved to be almost a farewell to the country he served so greatly, Mr. Justice Black said of "Our Federalism," in a slightly different yet closely related context:

The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

Younger v. Harris, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). It is this principle which underlies the exhaustion requirement in federal habeas corpus, first prescribed by the Supreme Court and later enacted by the Congress. See Ex parte Royall, 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886); Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1094 (1970). "[S]ensitivity to the legitimate interests" of New York required the district judge to withhold executing his own views, however deeply and sincerely felt, for the few days needed to enable the Appellate Division to determine whether it would grant the very relief he was asked to give.

The order issuing the writ must therefore be reversed and the petition dismissed. If we had been able to decide the case before the Appellate Division's decision, we should have directed the mandate to issue forthwith. Now, however, we have opinions from that court wherein two justices indicated they would grant a stay of the sentence pending appeal and the three others expressed willingness to consider the application once we had removed what they considered an obstacle created by the action of the district court. Indeed, the District Attorney has advised us that he will consent to such a stay. Accordingly, we shall withhold issuance of our mandate for forty-eight hours and if within that period petitioner seeks reconsideration of his stay application by the Appellate Division until determination thereof. If his application for a stay should be granted by that court, there will be no occasion for his seeking federal relief again; if not, the time for consideration of the serious issues posed by his petition will have arrived.

## APPENDIX

### ADDENDUM

At a term of the Appellate Division of the Supreme Court held in and for the First Judicial Department in the County of New York, on March 10, 1972.

Present—

Hon. ARTHUR MARKEWICH,

*Justice Presiding,*

EMILIO NUNEZ,
THEODORE R. KUPFERMAN,
FRANCIS T. MURPHY, Jr.,
ARON STEUER,

*Justices.*

M-8828

———◆———

The People of the State of New York,

—against—

John Doe, *et al.*

———◆———

In the Matter of the Motion of WBAI–FM and Edwin A. Goodman for an Order Quashing a Subpoena

———◆———

The People of the State of New York,

*Respondent,*

—against— ·

Edwin A. Goodman and WBAI Pacifica,

*Defendants-Appellants.*

The above-named defendants-appellants having moved this Court for an order pursuant to CPLR § 5519(c) staying all proceedings pursuant to a subpoena duces tecum (Exhibit AA annexed to the notice of motion), and staying sentence or admission to bail, pending the hearing and determination of the appeal taken by defendants-appellants from orders of the Supreme Court, New York County, entered on or about March 2 and March 3, 1972,

Now, upon reading and filing the notice of motion, with proof of due service thereof, and the affidavit of Edwin A. Goodman and the statements of Rhonda Copelon Schoenbrod in support of said motion and the statement of David L. Levinson in opposition thereto, and after hearing Rhonda Copelon Schoenbrod for the motion, and Mr. David L. Levinson opposed, and due deliberation having been had thereon, and upon the memorandum decision of this Court filed herein,

It is ordered that said motion be and the same hereby is denied on the ground that the motion has become academic in view of the release of appellant Goodman by the Federal Court pending appellate proceedings in this Court. Appellants are to procure the record on appeal and appellants' points to be served and filed on or before March 24, 1972, with notes of issue for the April 1972 Term of this Court; respondent's points to be served and filed on or before April 7, 1972; with reply points, if any, to be served and filed on or before April 14, 1972. [Nunez and Kupferman, JJ. dissent in a memorandum by Kupferman, J.]

Enter:

Joseph J. Tucchi
Deputy Clerk

APPELLATE DIVISION, SUPREME COURT
FIRST DEPARTMENT

*March 10, 1972*

The Court announces the following decision:

Markewich, J.P., Nunez, Kupferman, Murphy, Steuer, JJ.

M-8828

The People of the State of New York v. John Doe, et al.

In re WBAI-FM, et ano., etc.

The People of the State of New York v. Edwin A. Goodman, et ano.

Motion for a stay denied on the ground that the motion has become academic in view of the release of appellant Goodman by the Federal Court pending appellate proceedings in this Court. Appellants are to procure the record on appeal and appellants' points to be served and filed on or before March 24, 1972, with notes of issue for the April 1972 Term of this Court; respondent's points to be served and filed on or before April 7, 1972; with reply points, if any, to be served and filed on or before April 14, 1972.

The District Attorney has issued a subpoena duces tecum to respondents. The latter made an application to quash the subpoena which was denied by the Supreme Court (Culkin, J.). Upon refusal of the applicants to comply with the subpoena, the court summarily fined the corporate respondent $250 and ordered imprisonment of the individual respondent for a period of 30 days. Respondents served a notice of appeal and applied to the Supreme Court for a stay of execution and for bail pending the appeal. That application was denied. Respondents then made this motion in this court for the same relief. Pending the hearing of this motion respondents applied for the same relief to a judge of this court (McNally, J.) which was denied on the specific ground that our procedure (CPL, McKinney's Consol.Laws, c. 11–A, 460.50, subd. 3) allows only one such application. A preference on the hearing of the appeal was granted. A like application was made to a judge of the Court of Appeals and denied. Respondents then sued on a writ of habeas corpus in the United States District Court. Pursuant to that writ the individual respondent was admitted to bail

pending further proceedings. While the U.S. District Court (Frankel, J.) made the ruling subject to change upon further application, that ruling is currently in effect and the individual respondent is at large. The situation presented upon this motion is that all the relief pending the hearing of the appeal that could be obtained is already in effect. Under these circumstances any determination would be academic and would continue so just as long as the ruling of the District Court remains in effect. The motion is consequently denied. This ruling does not affect the preference granted on the application for an order to show cause, nor would it prevent a further application in the event that there is a change in the circumstances predicating this ruling.

All concur except Nunez and Kupferman, JJ., who dissent in the following memorandum by Kupferman, J.:

I differ on the procedure. In my opinion, the Federal court had no business intervening in this matter, and therefore we should proceed regardless of their action. It should be noted, however, that the transcript shows that Judge Frankel of the Federal District Court made it clear that he was acting only on an interim basis pending further action in our court.

Getting closer to the merits while I do not think that WBAI was necessarily correct in its position in refusing to produce copies of tapes already broadcast, nonetheless we are still in a grey area of the law as to what freedom of speech and press rights are involved, and under the circumstances the individual should not be jailed pending an expedited appeal here, which preference Judge McNally has already granted.

There is also a good question of whether the CPL or the CPLR applies, because while the contempt is in a criminal case, it is a civil contempt, and therefore we can consider the stay.

Accordingly, I would grant the stay provided the appeal is perfected forthwith.

Order filed.