Aaron Clinton ATKINS, Petitioner,

v.

PEOPLE OF the STATE OF MICHIGAN, William L. Cahalan, Wayne County Prosecuting Attorney and William Lucas, Wayne County Sheriff, Respondents.

Civ. No. 79–74405.

United States District Court,
E. D. Michigan, S. D.

April 15, 1980.

Edward F. Bell, Bell & Hudson, Detroit, Mich., for petitioner.

Anne B. Wetherholt, Asst. Wayne County Pros. Atty., Detroit, Mich., for respondents.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

"We do well to bear in mind the extraordinary prestige of the Great Writ, habeas corpus ad subjiciendum, in Anglo-American jurisprudence: 'the most celebrated writ in the English law.' 3 Blackstone Commentaries 129. It is 'a writ antecedent to statute, and throwing its root deep into the genius of our common law . . . It is perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement. It is of immemorial antiquity, an instance of its use occurring in the thirty-third year of Edward I.' *Secretary of State for Home Affairs v. O'Brien* [1923] AC 603, 609 (HL). Received into our own law in the colonial period, given explicit recognition in the Federal Constitution, Art. 1,

§ 9, cl. 2, incorporated in the first grant of federal court jurisdiction, Act of September 24, 1789, c. 20, § 14, 1 Stat. 81, 82, habeas corpus was early confirmed by Chief Justice John Marshall to be a 'great constitutional privilege.' *Ex parte Bollman and Swartwout* (U.S.) 4 Cranch 75, 95, 2 L.Ed. 554, 561. Only two Terms ago this Court had occasion to reaffirm the high place of the writ in our jurisprudence: 'We repeat what has been so truly said of the federal writ: "there is no higher duty than to maintain it unimpaired," *Bowen v. Johnston*, 306 U.S. 19, 26, 59 S.Ct. 442, 446, 83 L.Ed. 455, 461 (1939), and unsuspended, save only in the cases specified in our Constitution.' *Smith v. Bennett*, 365 U.S. 708, 713, 81 S.Ct. 895, 898, 6 L.Ed.2d 39, 43.

These are not extravagant expressions. Behind them may be discerned the unceasing contest between personal liberty and government oppression. It is no accident that habeas corpus has time and again played a central role in national crises, wherein the claims of order and of liberty clash most acutely, not only in England in the seventeenth century, but also in America from our very beginnings, and today."

Mr. Justice Brennan for the Court in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, at 372 U.S. 400, 83 S.Ct. at 828.

On January 22, 1979, Aaron Clinton Atkins voluntarily presented himself, with his attorney, for arraignment on a charge of first degree murder which had been brought against him by the People of the State of Michigan. With the exception of three brief periods, totaling 24 days, during which he was at liberty on bail ordered on three occasions by trial court judges who were immediately summarily reversed by the Michigan Court of Appeals, Aaron Atkins has been awaiting trial in the Wayne County Jail ever since. There is no date set for his trial. This opinion is being written fifteen months after his first of four voluntary surrenders since the charge in this matter was brought.

A magistrate of the Recorder's Court of the City of Detroit arraigned Atkins on January 22, 1979, on the charge of the murder of one Girard Tolbert, who had been found by the Wayne County Medical Examiner to have died of a drug overdose in 1974. The Magistrate remanded Atkins without bond to the Wayne County Jail. The following day Recorder's Court Judge Dalton Roberson set a $50,000.00 two-surety bond, on motion of Atkins' attorney. Although the People allege in their brief that the order was contrary to Michigan law, no appeal was taken.

The Michigan Constitution, Article 1, § 15 provides:

".   .   .   All persons shall, before conviction, be bailable by sufficient sureties, except for murder and treason when the proof is evident or the presumption great."

Michigan Compiled Laws, § 765.5 provides:

"No person charged with treason or murder shall be admitted to bail if the proof of his guilt is evident or the presumption great."

Michigan Court Rule 790, promulgated by the Supreme Court of Michigan, governs pretrial release. It provides, at 790.1, that, "Except for one charged with murder or treason when the proof is evident or the presumption great, a person charged with a crime is entitled to:

(1) release on his own recognizance,

(2) conditional release, or

(3) release on money bail (surety, 10 percent, or cash)."

The circumstances to be considered by a court in determinations of pretrial release are enumerated and, at 790.5, the rule further provides:

"Unless the defendant is released on his own recognizance, the court must state the reason for its decision on the record. The court's statement need not include a finding on each of the enumerated factors."

At 790.7, review of such orders is provided, as follows:

(b) A bail decision by a judge of a court of general jurisdiction may be reviewed by motion filed in the Court of Appeals.

\* \* \* \* \* \*

(d) The lower court's order setting bail remains in effect and may not be vacated, modified, or reversed except on a finding of an abuse of judicial discretion.

Mr. Atkins' Preliminary Examination, for which he again voluntarily presented himself, was held by Judge Clarice Jobes on January 31, 1979. At that time, he was bound over and again remanded to the Wayne County Jail, without bond. On February 6, 1979, the trial judge to whom the case was assigned, Judge Evelyn Cooper, reinstated the bond previously set by Judge Roberson, and that same day the Wayne County Prosecutor, on behalf of the People of Michigan, filed an emergency application for leave to appeal in the Michigan Court of Appeals. Within three days, on February 9, 1979, and without benefit of a transcript of the Recorder's Court hearing, the Michigan Court of Appeals issued a summary order granting immediate leave to appeal, and ruling:

> "It is further ordered that the bond set by the trial court in this cause be, and the same is hereby, canceled [sic] and the defendant is hereby ordered remanded to the Wayne County Jail."

No findings of either an abuse of discretion or of any other matters were made. That same Court's 1978 decision, in *People v. Edmond*, 81 Mich.App. 743, 266 N.W.2d 640, which had elucidated the above-quoted General Court Rule 790, had stated that the standard of review of a pretrial release or bail decision must be that of abuse of judicial discretion by the trial court. Moreover, in *Edmond*, that same court had held that a party seeking review of a bail decision under the pretrial release court rule must file with the Court of Appeals a certified copy of the transcript of the pretrial release hearing. Neither was done in this case.

Aaron Atkins voluntarily surrendered himself again after this bond cancellation, a trial date was set for April 5, 1979, and a series of pretrial evidentiary motions were heard in the interim. On the date of trial, when jury selection was to commence, the Wayne County Prosecutor filed and served a written motion requesting that the court rule upon the admissibility of the "similar acts" testimony of a previously endorsed witness, Levi Williams. Despite the objections of defense counsel that the motion cutoff date had passed, that the requisite four day notice had not been given and that the motion raised questions which could be resolved in the course of the trial, the trial judge, Judge Evelyn Cooper, adjourned the trial to take the motion under advisement. On May 14, 1979, Judge Cooper denied the prosecution motion and set a new trial date of May 30, 1979.

However, on May 18, 1979, the People filed an emergency application for leave to appeal Judge Cooper's adverse ruling; and on May 24, 1979, the Court of Appeals granted the prosecution motion for immediate consideration of the interlocutory appeal, granted a Stay of Trial pending appeal, and halved the briefing schedule. As with the first order, no grounds for the orders were stated. The Court of Appeals heard oral arguments on the appeal in October, 1979. The trial remains stayed, to this date, and no decision has yet been made by the Court of Appeals on the prosecution's emergency appeal.

On August 30, 1979, Judge Cooper heard arguments on Mr. Atkins' motion to dismiss for denial of his right to a speedy trial. She denied that request, but made findings on the record that circumstances had changed since the Court of Appeals' cancellation of bond of February 9, 1979, and for stated reasons including Atkins' history of three voluntary surrenders during pendency of the charges, and that he had been incarcerated for more than six months, ordered a $50,000 ten percent bond.

Michigan General Court Rule 789.2 relating to Speedy Trial in criminal cases, provides in relevant part that:

> "In felony cases where the defendant has been incarcerated for a period of six months or more to answer for the same crime or a crime based on the same con-

duct . . . the defendant shall be released on his own recognizance, except that in computing the . . . 6 month periods, the following periods shall be excluded:"

The prosecution's argument at that time and its subsequent appeal was that the following *exclusions* from the six month limitation of 789.2 were applicable to Atkins on August 30:

(1) The period of delay resulting from other proceedings concerning the defendant, including but not limited to an examination and hearing on [mental] competency and the period to which he is not competent to stand trial, *hearings on pretrial motions*, interlocutory appeals, and trial of other charges.

\*   \*   \*   \*   \*   \*

(3) The period of delay resulting from a continuance granted to the request of the prosecuting attorney, if

(a) the continuance is granted because of the *unavailability of evidence material to the state's case*, when the prosecuting attorney has exercised due diligence to obtain such evidence and there are *reasonable grounds to believe that such evidence will be available at the later date* ;

(b) the continuance is granted for good cause shown on the record to allow the prosecuting attorney additional time to prepare the state's case.

\*   \*   \*   \*   \*   \*

(5) *Other periods of delay for good cause within the discretion of the court*, however, docket congestion is not good cause for delay. (Emphasis added in prosecution briefs.)

Mr. Atkins was free on the $50,000 ten percent surety bond set by Judge Cooper from August 30, 1979, until September 12, 1979, when the Court of Appeals again issued a summary order cancelling bond and remanding him to the Wayne County Jail. He again surrendered voluntarily. The Court of Appeals again made its decision without a transcript and made no findings as to an abuse of discretion by the Trial Judge, or any other pertinent factors. It merely granted immediate consideration, granted emergency application for leave to appeal, and stated:

"It is further ordered that the order of the trial judge setting bond be, and is hereby set aside and the bond cancelled. Defendant is ordered remanded to the custody of the Wayne County Sheriff, pursuant to this Court's order of February 9, 1979."

After his fourth voluntary surrender Mr. Atkins filed an emergency application for leave to appeal to the Supreme Court of Michigan, which was denied on November 2, 1979, with the following statement:

"The emergency application for leave to appeal is DENIED, because the Court is not persuaded that the questions presented should be reviewed by this Court."

Mr. Atkins has never asked for an adjournment, since his first surrender and arraignment.

In October, 1979, before the Michigan Court of Appeals, the parties orally argued the merits of the prosecution's appeal for a declaration of the admissibility against Atkins at trial of the "similar acts" testimony of a Levi Williams. The Court's recording of those arguments sheds considerable light upon Mr. Atkins' eligibility for bond under the Michigan Constitution, statute, and Rules declaring all persons bailable before conviction except those charged with treason and murder *"when the proof is evident or the presumption great."* The arguments reflect repeated admissions by the prosecution that, despite five years of preparation for this charge of a 1974 murder, on the date of trial, it could not hope to convict Mr. Atkins without the "similar acts" testimony on which it insisted upon a pretrial ruling. Moreover, the "similar acts" testimony of Mr. Levi Williams which the prosecution deems necessary to its case had been given in two other prior prosecutions of Atkins in the Wayne County Circuit Court, and had been disbelieved to the extent that it resulted in dismissals of the charges against Atkins on both occasions. In 1977 Judge Theodore Bohn, after hearing the

testimony of Levi Williams on one of the acts now offered, directed the jury to find Atkins not guilty of the charge lodged. On the other act to which Levi Williams has testified and on which the prosecution again offers his testimony, then Wayne County Circuit Court Judge Blair Moody dismissed the charges for lack of probable cause. The purpose of the prosecution's insistence upon the "similar acts" testimony of Levi Williams in this matter, this court finds, is purely to create improper prejudice to Mr. Atkins, in the absence of sufficiently proper evidence to offer against him. The government's two other material witnesses, Mr. Moore and Ms. Marshall, have been in protective custody since the inception of this matter, are acknowledged and apparently notorious drug addicts of small credibility, are indicated by deposition testimony to have been continued in their addictive condition throughout custody, and are suggested by Atkins' counsel to have reached a condition of complete moral compromise and incredibility.

Finally, relevant to the bond status of Atkins as a person charged of murder "where the proof is evident", the prosecutor made the following argument to the Court of Appeals in its plea for admission of the "similar acts":

"I believe we can show guilt beyond a reasonable doubt based on Mr. Moore's testimony. I do not believe that the jury will find guilt beyond a reasonable doubt because of the actions of juries based upon my experience of proceedings in this. It is the prosecution's position that we can prove beyond a reasonable doubt through Mr. Moore's testimony, that crime was committed and that Mr. Atkins and Mr. Wiggins did it, but we do not believe that the jury, in weighing his testimony, will find guilt beyond a reasonable doubt."

At another point in that argument, the prosecution stated:

"We're talking about the crime of premeditated murder here and if we do not have any other evidence beyond Mr. Moore's testimony to who, that this, in fact was a death by criminal means and that Mr. Atkins and Mr. Wiggins were the perpetrators rather than the victim himself had an accidental overdose, I think this man will be acquitted also."

It is, therefore, acknowledged by the People of the State of Michigan that Mr. Atkins is not a murder defendant against whom "the proof is evident or the presumption great."

Aaron Atkins filed his petition for a Writ of Habeas Corpus in this court, pursuant to 28 U.S.C. § 2254, on November 14, 1979, complaining of violations by Respondents of his rights as guaranteed by the constitution of the United States to a speedy trial and to due process of law. Atkins petitions this court to dismiss the charge pending against him by the People of the State of Michigan.

On November 26, 1979, this Court entered an Order of Reference to Magistrate Paul Komives for hearing and recommendation. Notice of referral was served on Atkins' attorney, Edward F. Bell, as well as upon the Prosecutor of the County of Wayne and the Special Prosecutor, and the Attorney General of the State of Michigan.

After examining the Petition, as required by Rule 5, Rules governing § 2254, Magistrate Komives by order accorded Respondents 60 days in which to respond to Mr. Atkins' petition. On the 61st day, February 21, 1980, the Attorney General, by Assistant Attorney General C. Michael Mathis, entered an appearance and filed a Motion for Enlargement of Time in which to respond. Four days later, on February 26, 1980, Atkins' counsel answered that motion stating grounds adequate for an extension of time had not been demonstrated. This court denied the motion and entered an Order to the People to Show Cause before the court why the Writ and requested relief should not be granted, on April 7, 1980.

On February 28, 1980, prior to the entry of the Order to Show Cause, Magistrate Komives ordered the clerk of the court to serve a copy of Mr. Atkins' petition upon William Lucas, Sheriff, and William Cahalan, the Wayne County Prosecutor. The Magistrate further ordered these parties to

file a responsive pleading to the petition on or before March 28, 1980. Service of the petition was effectuated on March 5, 1980, but the Wayne County officials who actually held Mr. Atkins in custody were not served with the Order to Show Cause. They were, however, orally notified of the April 7, 1980 hearing by the court. The answer and brief in support was filed by the Wayne County Prosecutor on March 27, 1980.

The Assistant Prosecuting Attorney for Wayne County, C. Michael Mathis, Assistant Attorney General of the State of Michigan, and Edward F. Bell, attorney for the petitioner, appeared before the court on April 7, 1980 for the Show Cause hearing. Mr. Bell orally reiterated the procedural history of petitioner's present circumstances. He addressed himself, as well, to the merits of Mr. Atkins' petition for a writ of habeas corpus and for dismissal of the murder charge for denial of his federal constitutional rights to a speedy trial and to the due process of law, in bond denials.

The Assistant Wayne County Prosecutor appearing on behalf of the Sheriff, the custodian of Petition Atkins, and on behalf of the County Prosecutor, was unprepared to argue on the merits, and her responsive argument was adjourned to April 14, 1980.

The Assistant Attorney General, Mr. Mathis, who had on February 21, 1980 filed an appearance and requested an extension of time in which to file responses on behalf of the People, stated that his personal function is to represent only the Michigan Department of Corrections, and inasmuch as Mr. Atkins is now in the Wayne County Jail, he had no presentation to make on behalf of the People.

Arguments were concluded on April 14, 1980, with the prosecution's presentation of its argument that, although Atkins has asserted his right to a speedy trial at three levels of the state judiciary, he has not properly done so as is required for exhaustion of state remedies, because he has cited state, not federal, case law to the state courts. This court finds that argument to be factually incorrect and legally unworthy.

The Eighth Amendment to the Constitution of the United States of America mandates that "excessive bail shall not be required." In *Schilb v. Kuebel*, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971) the Supreme Court stated that "the Eighth Amendment's proscription of excessive bail has been assumed to have application to the States through the Fourteenth Amendment" (404 U.S. at 365, 92 S.Ct. at 484). In *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951) perhaps the leading Supreme Court decision on the constitutional right to bail, the court recognized that "[u]nless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning" (342 U.S. at 4, 72 S.Ct. at 3). The *Boyle* decision mandated that bail be set in every case in an amount no greater than necessary to assure the defendant's appearance for trial. The utilization of bail for any punitive purpose, accordingly, is impermissible.

On petition for habeas corpus, it is settled that a federal court has jurisdiction to review the denial of bail by state courts, where a constitutional violation has been alleged. See *In re Shuttlesworth*, 369 U.S. 35, 82 S.Ct. 551, 7 L.Ed.2d 548 (1965), a case of a civil rights demonstration leader held without bail; and *Turco v. State of Maryland*, 324 F.Supp. 61 (U.S.D.C.Md.), aff'd. 4 Cir., 444 F.2d 56, a case of a Black Panther activist held without bail; and *United States ex rel. Goodman v. Kehl*, 456 F.2d 863 (CA 2, 1972), a denial of bail in a contempt matter growing out of certain riots which had occurred at the Manhattan House of Detention in 1970. The federal courts, on this writ, perceive no constitutional distinction between the requiring of excessive bail and the denial of bail altogether, in the absence of legitimate reasons. The *Goodman, supra*, court wrote:

"Consequently, 'under the Eighth Amendment, where bail is fixed . . . it must not be excessive, and further, where bail is not a matter of right, the [state] court may not arbitrarily or unrea-

sonably deny bail.'" *U. S. ex rel. Covington v. Coparo,* 297 F.Supp. 203, 206. Federal habeas corpus has been recognized to be an appropriate remedial device for bringing before a federal court challenges to state bail practices before and during a criminal proceeding." 456 F.2d at 868.

In *Mastrian v. Hedman,* 326 F.2d 708, 711 (CA 8, 1964), cert. denied 376 U.S. 965, 84 S.Ct. 1128, 11 L.Ed.2d 982, the court wrote that "[a]s to . . . offenses . . . for which a state has provided a right of bail it may not, any more than as to other substantive or procedural benefits under its criminal law system, engage in such administration as arbitrarily or discriminatorily to effect denial or deprivation of the right to a particular accused." Also see *United States ex rel. Shakur v. Commissioner of Corrections,* 303 F.Supp. 303, S.D.N.Y. aff'd 418 F.2d 243 (CA 2, 1969), cert. denied 397 U.S. 999, 90 S.Ct. 1144, 25 L.Ed.2d 408 (1970). This Court finds the cancellations of Petitioner Atkins' bail, by the Michigan Court of Appeals, after that bail had twice been set by the trial judge, under all of the circumstances described above, constitute an arbitrary and discriminatory denial of his right to the due process of law.

■ The Michigan constitution, statutes, and Court Rules, all cited above, uniformly guarantee an accused the right to have reasonable pretrial bond established except when the charge is treason or murder, and the proof evident or presumption great. The Court rules provide the nine factors to be considered in establishing terms of release; provide that reasons must be given by the court when any pretrial status other than personal recognizance is ordered; and provide that a reversal of the trial judge's decision be made only after an explicit finding of an abuse of discretion. Case law requires that the finding of an abuse of discretion be based upon the review of a certified transcript.

■ The case against Aaron Atkins, the court finds on the basis of the prosecution's above-quoted argument to the Court of Appeals, is not one in which the proof is evident or the presumption great. It is a case, instead, in which the prosecution admits that it cannot, without the assistance of highly prejudicial evidence of small probative value, obtain a conviction. Moreover, the Court of Appeals on both February 9, 1979 and again on September 12, 1979, cancelled the bail set for petitioner by a trial judge without benefit of transcript, without a finding of any abuse of discretion, and without stated reasons of any sort. Accordingly, the denials of bail which have twice occurred herein, and which were affirmed by the Supreme Court of Michigan by its denial of Petitioner's application for leave to appeal on November 2, 1979, are hereby found to constitute an arbitrary and discriminatory denial of Mr. Atkins' right to the due process of law.

■ The Supreme Court in *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), established that the right to a speedy trial is a fundamental one required by the due process clause of the Fourteenth Amendment to be recognized by the states. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Court enumerated the four factors which are relevant to an assessment of whether that fundamental right to a speedy trial has been abridged. Those factors include (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to defendant both in terms of personal anxiety and stress and in terms of impact upon his ability to present an adequate defense. None of the four factors are either necessary or sufficient, but rather the court must consider those factors which are relevant to the particular defendant before it. *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). When an abridgement of the right to speedy trial has been demonstrated, the court is required to dismiss the indictment against the accused. *Strunk v. United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).

The ad hoc balancing test mandated by the *Barker* formula was adopted by Michigan in *People v. Grimmett,* 388 Mich. 590, 596, 202 N.W.2d 278 (1972), and *People v.*

*Collins,* 388 Mich. 680, 688, 202 N.W.2d 769 (1972).

■ Not only does *Barker v. Wingo* contemplate that a speedy trial challenge may be raised by a petitioner prior to trial, 407 U.S. 514, 522, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 but *Braden v. 30th Judicial Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), makes clear that a federal district court has jurisdiction to hear a petition for habeas relief on a speedy trial claim prior to trial on a pending criminal charge. See also *Kane v. State of Virginia,* 419 F.2d 1369 (4 Cir. 1970) and *May v. State of Georgia,* 409 F.2d 203 (5 Cir. 1969).

■ While the Respondent People of the State of Michigan rely upon *United States v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) to argue that petitioner is premature in raising denial of his right to speedy trial at this point in time, *MacDonald* is not relevant to a habeas challenge to state court proceedings. *MacDonald* holds that the defendant may not pursue an appeal from a federal district court's denial of a motion to dismiss based upon speedy trial violations prior to the trial of his cause. However, the purpose of habeas corpus differs significantly from that of an appeal, in that the Petition for a Writ represents a collateral challenge to the state court rulings which arguably violate a petitioner's constitutionally guaranteed rights. This court's consideration of the habeas petition has not caused any delay of the state proceedings.

■ This court has considered the four factors to which the Supreme Court has directed its attention, in the *Barker* case. The duration of delay in this case has been fifteen months, and no trial date is set. Atkins has been incarcerated throughout, except for the brief periods of freedom prior to reversal of the two bail orders of the Trial Judge. The prosecution relies upon Michigan General Court Rule 789.2(1) in arguing that periods of interlocutory appeal are to be excluded. The language of that court rule, however, is applicable to interlocutory appeals of *other charges.* Moreover, the appeal is from the denial of an eleventh hour prosecution pretrial motion which the prosecution has here acknowledged could have been handled as an evidentiary ruling during trial, and which is based upon the prosecution's further acknowledgement to the Court of Appeals that it is, with possible available evidence, unable to obtain a conviction. The reason for delay includes approximately four months prior to the initial trial date of April 5, 1978, which were spent in pretrial motions, and which is permissible delay. However, approximately eleven months since May 18, 1979 have been consumed by the Michigan Court of Appeals' interlocutory consideration of the People's emergency appeal. This delay is impermissibly in derogation of Petitioner's right to a speedy trial. See *People v. Chism,* 390 Mich. 104, 211 N.W.2d 193 (1973), in which the Michigan Supreme Court considered a 14½ month interlocutory appeal initiated by the defendant. While the court confirmed that ". . . time reasonably consumed on appeal cannot be considered as in derogation of a speedy trial . . . the whole 14½ months required by the Court of Appeals to dispose of this motion is hard to justify under the circumstances, particularly in light of that court's abbreviating the time for filing briefs and motion[s] . . . Consequently, it must be recognized that a part of the appeal time is indeed excessive . . . ." 390 Mich. 104, 113, 211 N.W.2d 193, 197.

In this case the People, not defendant, initiated the May 18, 1979, interlocutory appeal; and the Court of Appeals has been well aware of defendant Atkins' incarceration, having twice reversed the Trial Court's decision to grant him bail, and having inquired of the prosecution during the October oral arguments as to whether the prosecution was concerned about a speedy trial problem. Accordingly, this court finds the interlocutory appeal to have been an overlong delay, and an intrusion upon Atkins' constitutional right to a speedy trial. The delay is a particularly egregious intrusion, moreover, because it has been com-

bined with two improper summary reversals of the trial court's pretrial bail decisions.

This Defendant, Petitioner Atkins', assertion of his right to a speedy trial began with his objection to the People's untimely and unnecessary pretrial motion on the day of his scheduled trial, April 5, 1979, and has continued unflaggingly throughout this period. Petitioner's motion to dismiss for denial of speedy trial was denied by Judge Cooper in August, 1979, and although her new bail order was reversed, her refusal to dismiss was left undisturbed by the Court of Appeals' September Order, and by the Supreme Court of Michigan's rejection of Atkins' appeal in November. Petitioner then, on November 14, 1979, brought his request for habeas corpus to this court on the basis of a speedy trial denial. Mr. Atkins has never requested an adjournment.

In *Strunk v. United States, supra,* the opinion of Chief Justice Burger noted:

"It is true that *Barker* described dismissal of an indictment for denial of a speedy trial as an 'unsatisfactorily severe remedy.' Indeed, in practice,' it means that a defendant who may be guilty of a serious crime may go free, without having been tried'." 407 U.S. at 522 [92 S.Ct. at 2188]. But such severe remedies are not unique in the application of constitutional standards. In light of the policies which underlie the right to a speedy trial, dismissal must remain, as Barker noted, 'the only possible remedy.' *Ibid.*"

The *Strunk* case is also pertinent to the fourth applicable factor for consideration of an arguably overlong delay: prejudice to the defendant. *Strunk,* holds, at 412 U.S. 439, 93 S.Ct. at 2263:

"The speedy trial guarantee recognizes that a prolonged delay may subject the accused to an emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial or of receiving a sentence longer than, or consecutive to, the one he is presently serving—uncertainties that a prompt trial removes."

This court finds Petitioner Atkins to have been prejudiced if only and at least, by the emotional stress which the *Strunk* court permits us to presume. Accordingly, for all of the reasons outlined above, this Court finds Petitioner Atkins to have been deprived of his right to a speedy trial to such an extent that the State of Michigan has denied to him the due process of law as assured by the Fourteenth Amendment of the United States Constitution.

It appears to this court that the prosecution, knowing that its evidence is insufficient to establish the guilt of Aaron Atkins beyond a reasonable doubt, has embarked upon a course of delay of the moment of truth, in derogation of the right assured by the United States Constitution to all accused persons to a speedy and public trial. Simultaneously, the prosecution and the law officers involved appear to have undertaken a campaign of vilification of Atkins, his most diligent defense counsel, and of the trial Judges of the Recorder's Court who have released Atkins on bail. The court takes judicial notice of that campaign, inasmuch as it is a matter of public knowledge beyond dispute within this district conducted from the front pages of its leading newspaper; the evening newspaper of largest circulation in the nation.

Throughout this period Atkins, a legally innocent man, has remained incarcerated in the Wayne County Jail, in violation of all applicable state laws and court rules.

This Court will grant the Writ, and the relief requested of dismissal of the pending charge. In doing so, it refers again to the opinion of Mr. Justice Brennan in *Fay v. Noia, supra,* at 372 U.S. 440, 83 S.Ct. at 850, as follows:

"It should be unnecessary to repeat what so often has been said and what so plainly is the case: that the availability of the Great Writ of habeas corpus in the federal courts for persons in the custody of the States offends no legitimate state interest in the enforcement of criminal justice or procedure. Our decision today swings open no prison gates. Today as always few indeed is the number of state prisoners who eventually win their freedom by means of federal habeas corpus. Those

few who are ultimately successful are persons whom society has grievously wronged and for whom belated liberation is little enough compensation. Surely no fair-minded person will contend that those who have been deprived of their liberty without due process of law ought nevertheless to languish in prison.

\*     \*     \*     \*     \*     \*

For such anomalies, such affronts to the conscience of a civilized society, habeas corpus is predestined by its historical role in the struggle for personal liberty to be the ultimate remedy. If the States withhold effective remedy, the federal courts have the power and the duty to provide it. Habeas corpus is one of the precious heritages of Anglo-American civilization. We do no more today than confirm its continuing efficacy."

So Ordered.